## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| **TDC SPECIALTY INSURANCE COMPANY,** | ) | **CIVIL ACTION NO. 21 cv 50125** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MERCY HEALTH CORPORATION, JAVON BEA HOSPITAL f/k/a ROCKFORD MEMORIAL HOSPITAL, ROCKFORD HEALTH PHYSICIANS, JUSTIN K. KWAK, M.D., PHILIP T. MINER, M.D., ISABEL A. GONZALEZ, M.D., ADNAN I. QURESHI, M.D., GINGER NEUBAUER, individually and as the guardian for Adrian Neubauer, and MIDLAND TRUST COMPANY, as the guardian for Faithe R. Reed,** | ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff TDC Specialty Insurance Company ("TDCSI"), for its complaint against Defendants Mercy Health Corporation ("Mercy Health"), Javon Bea Hospital f/k/a Rockford Memorial Hospital ("RMH"), Rockford Health Physicians ("RHP"), Justin K. Kwak, M.D., Philip T. Miner, M.D., Isabel A. Gonzalez, M.D., Adnan I. Qureshi, M.D., Ginger Neubauer, individually and as the guardian for Adrian Neubauer, and Midland Trust Company as the guardian for Faithe R. Reed, alleges on information and belief as follows:

## NATURE OF ACTION

1.     TDCSI files this action to obtain a judicial determination and declaration as to the parties' rights and obligations under Health Care Organizations and Providers Follow Form

Excess Policy No. HPX-00001-16-00 issued to Mercy Health for the **policy period**[1] September 1, 2016 to September 1, 2017 (the "2016-17 Policy"), Health Care Organizations and Providers Follow Form Excess Policy No. HPX-00001-17-01 issued to Mercy Health for the **policy period** September 1, 2017 to July 1, 2018 (the "2017-18 Policy"), and, alternatively, Health Care Organizations and Providers Follow Form Excess Policy No. HPX-00001-18-02 issued to Mercy Health for the **policy period** July 1, 2018 to July 1, 2019 (the "2018-19 Policy"), with respect to certain claims. True and correct copies of the 2016-17 Policy, the 2017-18 Policy, and the 2018-19 Policy (collectively, the "Policies"), without applications, and with the amount of the premiums redacted, are attached to this Complaint as Exhibits A, B and C, respectively.

2.     An actual and justiciable controversy has arisen and now exists relating to the parties' respective rights, duties and obligations under the Policies.

3.     As set forth below, TDCSI seeks a declaratory judgment that (i) the 2016-17 Policy does not afford coverage for an action styled *Aidan Neubauer, a minor, by and through his mother and Next Friend, Ginger Neubauer v. Rockford Health Physicians, Rockford Memorial Hospital, Justin K. Kwak, M.D., Philip T. Miner, M.D., and Isabel A. Gonzalez, M.D.*, No. 2017-L-0000220 (17th Jud. Cir. Ct., Winnebago Cnty., Ill.) (the "Neubauer Action") because the Neubauer Action was not a **claim** that was first made and reported to TDCSI during the 2016-17 **policy period**; and (ii) the Policies do not afford coverage for an action currently styled *Faithe R. Reed, a disabled adult, by her guardian, Midland Trust Company v. Rockford Memorial Hospital, Rockland Health Physicians, and Adrian I. Qureshi, M.D.*, No. 2018-L-0000192 (17th Jud. Cir. Ct., Winnebago Cnty., Ill.) (the "Reed Action"), because the Reed Action concerns a brain injury that was not reported as soon as practicable; or, in the alternative

---

[1] Terms in bold appear as bold in the referenced Policies.

4846-4031-7407.3

(iii) the 2017-18 Policy does not afford coverage for the Reed Action because it is not a **claim** that was first made and reported to TDCSI during the 2017-18 **policy period**; or, in the alternative, (iv) the 2018-19 Policy does not afford coverage for the Reed Action, because the Reed action was not a **claim** that was first made and reported to TDCSI during the 2018-19 **policy period**.

## JURISDICTION AND VENUE

4.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a)(1), 2201 and 2202.  There is complete diversity of citizenship between plaintiff and defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.     An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties concerning their respective rights, duties and obligations under the Policies.

6.     Venue is proper pursuant to 28 U.S.C. § 1391, in that a substantial part of the events giving rise to the claims at issue in this action occurred in this district, and the Policies were issued to Mercy Health, which maintains its principal place of business in this district.

## PARTIES

7.     Plaintiff TDCSI is a corporation organized and existing under the laws of the District of Columbia with its principal place of business located in California.  TDCSI legally transacts insurance business in the State of Illinois and within the geographical jurisdiction of this Court.

8.     Defendant Mercy Health Corporation is a company organized and existing under the laws of the State of Illinois, with its principal place of business in Illinois.  Mercy Health Corporation legally transacts business in the State of Illinois and within the geographical jurisdiction of this Court.

3

9.     Defendant Javon Bea Hospital f/k/a Rockford Memorial Hospital is a company organized and existing under the laws of the State of Illinois, with its principal place of business in Illinois.  Javon Bea Hospital legally transacts business in the State of Illinois and within the geographical jurisdiction of this Court.

10.     Defendant Rockford Health Physicians is a company organized and existing under the laws of the State of Illinois, with its principal place of business in Illinois.  Rockford Health Physicians legally transacts business in the State of Illinois and within the geographical jurisdiction of this Court.

11.     Defendant Justin K. Kwak, M.D. is a citizen of Illinois who resides in DuPage County, Illinois.

12.     Defendant Philip T. Miner, M.D. is a citizen of Florida who resides in Sarasota, Florida.

13.     Defendant Isabel A. Gonzalez, M.D. is a citizen of Illinois who resides in Illinois.

14.     Defendant Ginger Neubauer is a citizen of Illinois who resides in Winnebago County, Illinois.

15.     Defendant Ginger Neubauer also is the guardian of minor Adrian Neubauer, a citizen of Illinois who resides in Winnebago County, Illinois.

16.     Defendant Adnan I. Qureshi, M.D is a citizen of Minnesota who resides in St. Cloud, Minnesota.

17.     Defendant Midland Trust Company is the appointed guardian for Faithe Reed, a disabled adult citizen of Illinois who resides in Winnebago County, Illinois,

## FACTUAL ALLEGATIONS

**The Neubauer Action**

18.     On July 14, 2017, Ginger Neubauer ("Neubauer") filed the complaint in the Neubauer Action against RHP, RMH, Justin K. Kwak, M.D., Philip T. Miner, M.D., and Isabel A. Gonzalez, M.D.

19.     The Neubauer Action alleges that Aidan Neubauer, the minor child of Neubauer, was treated at RMH beginning on May 2, 2016, before being transferred to another facility.  The Neubauer Action alleges that the acts or omissions by the defendants named in the Neubauer Action caused Aidan to lose progress he had made in his life with his diagnosis of cerebral palsy, and caused Aidan to be reduced to a somnolent quadriplegic with little enjoyment of life, and requiring significant future care.

20.     On April 14, 2020, almost three years after Neubauer filed the complaint in the Neubauer action, counsel for defendants in the Neubauer Action submitted to TDCSI through its claims administrator, TDC Specialty Underwriters, Inc., a Notice of Claim, providing the first notice of the Neubauer Action.

21.     RMH, RHP, Justin K. Kwak, M.D., Philip T. Miner, M.D., and Isabel A. Gonzalez, M.D. have sought coverage for the Neubauer Action under the 2016-17 Policy.

22.     TDCSI denied coverage for the Neubauer Action under the terms of the 2016-17 Policy.

**The Reed Action**

23.     On June 27, 2018, the guardian on behalf of Faithe Reed filed the complaint in the Reed Action against RMH, RHP, and Adnan I. Qureshi, M.D.

24.     The Reed Action alleges that, Ms. Reed, then a 24-year old woman, was admitted to RMH on November 9, 2016.  At RMH, Dr. Qureshi allegedly incorrectly identified an aneurysm and negligently provided treatment, which allegedly led to a brain injury.

25.     On November 23, 2016, Ms. Reed was transferred to a nursing facility for long-term care.

26.     Mercy Health apparently sent a claim incident form to report the Reed Action to ProAssurance, but not to TDCSI, on July 13, 2018.

27.     Mercy Health sent TDCSI's claim administrator a copy of a loss run on September 26, 2018.

28.     Beginning in May 2020, defense counsel in the Reed Action began submitting to TDCSI's claim administrator various updates regarding depositions, experts, and trial date in reference to the Reed Action.

29.     RMH, RHP, and Dr. Qureshi have sought coverage for the Reed Action under the 2018-19 Policy.

30.     TDCSI denied coverage for the Reed Action under the terms of both the 2017-18 Policy and the 2018-19 Policy.

**The Policies**

### The 2016-17 Policy

31.     TDCSI issued Health Care Organizations and Providers Follow Form Excess Policy No. HPX-00001-16-00 to Mercy Health for the **policy period** September 1, 2016 to September 1, 2017.

32.     Subject to all of its terms and conditions, the 2016-17 Policy provides a $10,000,000 each **claim** and aggregate limit of liability in excess of the total limits of liability for

all applicable **underlying insurance** which an **insured** is legally obligated to pay as result of a covered **claim**. The limits of liability of the **underlying insurance** are set forth in Schedule of Underlying Insurance identified in ITEM 4 of the Declarations as amended by Endorsement No. 1 (the "Schedule of Underlying Insurance").

33.     Subject to further restrictions in coverage set forth in the **underlying insurance**, the 2016-17 Policy follows form to the **primary policy** identified in the Schedule of Underlying Insurance.

34.     The 2016-17 Policy Schedule of Underlying Insurance at Endorsement No. 1 lists **primary policies**, including a "Buffer SIR" policy issued by Rockford Health Insurance Ltd., and **underlying insurance**, including a Healthcare Facility Excess Umbrella Liability Policy issued to Mercy Health by ProAssurance Specialty Insurance Company, Inc. ("ProAssurance").

35.     The 2016-17 Policy's Declarations Page states:

**PORTIONS OF THIS POLICY APPLY ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO US DURING THE POLICY PERIOD. DEFENSE COSTS ARE PART OF AND NOT IN ADDITION TO THE LIMITS OF LIABILITY. *PLEASE READ THIS POLICY CAREFULLY.***

2016-17 Policy, Declarations (italics in original).

36.     The Insuring Agreement in the 2016-17 Policy provides:

**I. INSURING AGREEMENT**

**We** will pay on behalf of the **insured**, up to the applicable Limit of Liability shown in ITEM 3 of the Declarations, any loss, damages, judgments, settlements, and defense costs in excess of the total limits of liability for all applicable **underlying insurance** which an **insured** is legally obligated to pay as result of a covered **claim**; provided, that:

(A) such **underlying insurance** also applies and has been exhausted by actual payment thereunder, or would apply but for the exhaustion of the total limits of liability thereunder;

(B) this Policy will apply in conformance with, and will follow the form of, the terms and conditions of the **primary policy** (including all endorsements thereto), and to the extent coverage is further limited or restricted by any other **underlying insurance**, of such **underlying insurance**, except:

(1) with respect to any provision to the contrary in this Policy;

(2) the applicable limits of liability of such **underlying insurance** shall be deemed to be reduced or exhausted solely as a result of payments for loss, damages, judgments, settlements, or defense costs that are covered under this Policy;

(3) the coverage provided by this Policy shall not be broader than any **underlying insurance** unless expressly provided in this Policy; and

(4) in all events, in the event that this Policy provides insurance excess of professional liability, the coverage afforded hereunder with respect to such professional liability coverage shall be deemed to apply on a claims-made and reported basis, regardless of whether the **primary policy** provides such coverage on a claims-made or occurrence basis;

(C) **we** will not have any obligation to make any payment hereunder unless and until the full amount of the total limits of liability of such **underlying insurance** has been paid by the issuer(s) of such **underlying insurance**, an **insured** or by another party on behalf, or for the benefit, of the **insured** or the issuer(s) of such **underlying insurance**; and

(D) **our** obligation to pay loss, damages, judgments, settlements, and defense costs as a result of a covered **claim** after the date of exhaustion of the full amount of the total limits of liability of such **underlying insurance** shall be excess of any applicable deductible or retention under the **underlying insurance**.

2016-17 Policy, Section I.

37.     The Insuring Agreement in the 2016-17 Policy requires that "in all events, in the event that this Policy provides insurance excess of professional liability, the coverage afforded hereunder with respect to such professional liability coverage shall be deemed to apply on a claims-made and reported basis, regardless of whether the **primary policy** provides such coverage on a claims-made or occurrence basis." (Emphasis in underline added).

38.     Section V in the 2016-17 Policy states that:

**V. REPORTING OF CLAIMS AND CIRCUMSTANCES**

As a condition precedent to any right to coverage under this Policy, the **insured** must comply with the following:

(A) the **insured** must provide **us** with written notice of any **claim** as soon as practicable, and in any event within the time period set forth by the **primary policy** with respect to notice of **claims**;

(B) the **insured** must provide **us** with written notice of any claim, loss, act, error, omission, circumstance, or other matter with respect to which notice has been provided under any **underlying insurance**[.]

…

39.     ITEM 6 in the Declarations of the 2016-17 Policy states:

ITEM 6. **ALL NOTICES REQUIRED TO BE GIVEN TO US UNDER SECTION V. REPORTING OF CLAIMS AND CIRCUMSTANCES OF THIS POLICY MUST BE ADDRESSED TO:**

Mari Spina
TDC Specialty Underwriters, Inc.
NoticeOfLoss@TDCSpecialty.com

**ALL OTHER NOTICES REQUIRED TO BE GIVEN TO US UNDER THIS POLICY MUST BE ADDRESSED TO:**

TDC Specialty Underwriters, Inc.
29 Mill Street, Suite 1.6
Unionville, CT 06085

40.     Condition IV.C.4. in the Claims Made Coverage Part A of the "Buffer SIR"

policy to which the 2016-17 Policy follows form states that, as a condition precedent to

coverage,

4.     **You** must also give **us** written notice as soon as practicable of any injury of the following types:
…
b.     unanticipated neurological, sensory and/or systemic deficits, brain damage, permanent paralysis including paraplegia and quadriplegia, partial or complete loss of sight or hearing, kidney failure or sepsis[.]

**The 2017-18 Policy**

41.     TDCSI issued Health Care Organizations and Providers Follow Form Excess

Policy No. HPX-00001-17-01 to Mercy Health for the **policy period** September 1, 2017 to July

1, 2018.

42.     Subject to all of its terms and conditions, the 2017-18 Policy provides a

$10,000,000 each **claim** and aggregate limit of liability in excess of the total limits of liability for

all applicable **underlying insurance** which an **insured** is legally obligated to pay as result of a covered **claim**. The limits of liability of the **underlying insurance** are set forth in Schedule of Underlying Insurance identified in ITEM 4 of the Declarations as amended by Endorsement No. 1 (the "Schedule of Underlying Insurance").

43.      Subject to further restrictions in coverage in the **underlying insurance**, the 2017-18 Policy follows form to the **primary policy** identified in the Schedule of Underlying Insurance.

44.      The 2017-18 Policy Schedule of Underlying Insurance at Endorsement No. 1 lists **primary policies**, including a "Buffer SIR" policy issued by Rockford Health Insurance Ltd., and **underlying insurance**, including a Healthcare Facility Excess Umbrella Liability Policy issued to Mercy Health by ProAssurance.

45.      The 2017-18 Policy's Declarations Page states:

**PORTIONS OF THIS POLICY APPLY ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO US DURING THE POLICY PERIOD. DEFENSE COSTS ARE PART OF AND NOT IN ADDITION TO THE LIMITS OF LIABILITY. *PLEASE READ THIS POLICY CAREFULLY*.**

2017-18 Policy, Declarations (italics in original).

46.      The Insuring Agreement in the 2017-18 Policy provides:

**I. INSURING AGREEMENT**

**We** will pay on behalf of the **insured**, up to the applicable Limit of Liability shown in ITEM 3 of the Declarations, any loss, damages, judgments, settlements, and defense costs in excess of the total limits of liability for all applicable **underlying insurance** which an **insured** is legally obligated to pay as result of a covered **claim**; provided, that:

(A) such **underlying insurance** also applies and has been exhausted by actual payment thereunder, or would apply but for the exhaustion of the total limits of liability thereunder;

(B) this Policy will apply in conformance with, and will follow the form of, the terms and conditions of the **primary policy** (including all endorsements thereto), and to the extent coverage is further limited or restricted by any other **underlying insurance**, of such **underlying insurance**, except:

(1) with respect to any provision to the contrary in this Policy;

(2) the applicable limits of liability of such **underlying insurance** shall be deemed to be reduced or exhausted solely as a result of payments for loss, damages, judgments, settlements, or defense costs that are covered under this Policy;

(3) the coverage provided by this Policy shall not be broader than any **underlying insurance** unless expressly provided in this Policy; and

(4) in all events, in the event that this Policy provides insurance excess of professional liability, the coverage afforded hereunder with respect to such professional liability coverage shall be deemed to apply on a claims-made and reported basis, regardless of whether the **primary policy** provides such coverage on a claims-made or occurrence basis;

(C) **we** will not have any obligation to make any payment hereunder unless and until the full amount of the total limits of liability of such **underlying insurance** has been paid by the issuer(s) of such **underlying insurance**, an **insured** or by another party on behalf, or for the benefit, of the **insured** or the issuer(s) of such **underlying insurance**; and

(D) **our** obligation to pay loss, damages, judgments, settlements, and defense costs as a result of a covered **claim** after the date of exhaustion of the full amount of the total limits of liability of such **underlying insurance** shall be excess of any applicable deductible or retention under the **underlying insurance**.

2017-18 Policy, Section I.

47.     The Insuring Agreement in the 2017-18 Policy requires that "in all events, in the event that this Policy provides insurance excess of professional liability, the coverage afforded hereunder with respect to such professional liability coverage shall be deemed to apply on a claims-made and reported basis, regardless of whether the **primary policy** provides such coverage on a claims-made or occurrence basis."  (Emphasis in underline added).

48.     Section V in the 2017-18 Policy states that:

**V. REPORTING OF CLAIMS AND CIRCUMSTANCES**

As a condition precedent to any right to coverage under this Policy, the **insured** must comply with the following:

(B)  the **insured** must provide **us** with written notice of any **claim** as soon as practicable, and in any event within the time period set forth by the **primary policy** with respect to notice of **claims**;

11

(B) the **insured** must provide **us** with written notice of any claim, loss, act, error, omission, circumstance, or other matter with respect to which notice has been provided under any **underlying insurance**[.]

…

49. ITEM 6 in the Declarations of the 2017-18 Policy states:

ITEM 6. **ALL NOTICES REQUIRED TO BE GIVEN TO US UNDER SECTION V. REPORTING OF CLAIMS AND CIRCUMSTANCES OF THIS POLICY MUST BE ADDRESSED TO:**

Mari Spina
TDC Specialty Underwriters, Inc.
NoticeOfLoss@TDCSpecialty.com

**ALL OTHER NOTICES REQUIRED TO BE GIVEN TO US UNDER THIS POLICY MUST BE ADDRESSED TO:**

TDC Specialty Underwriters, Inc.
29 Mill Street, Suite 1.6
Unionville, CT 06085

50. Condition IV.C.4. in the Claims Made Coverage Part A of the "Buffer SIR"

policy to which the 2017-18 Policy follows form states that, as a condition precedent to

coverage,

4. You must also give us written notice as soon as practicable of any injury of the following types:
…
b. unanticipated neurological, sensory and/or systemic deficits, brain damage, permanent paralysis including paraplegia and quadriplegia, partial or complete loss of sight or hearing, kidney failure or sepsis[.]

**The 2018-19 Policy**

51. TDCSI issued Health Care Organizations and Providers Follow Form Excess

Policy No. HPX-00001-18-02 to Mercy Health for the **policy period** July 1, 2018 to July 1,

2019.

52. Subject to all of its terms and conditions, the 2018-19 Policy provides a

$15,000,000 each **claim** and aggregate limit of liability in excess of the total limits of liability for

12

all applicable **underlying insurance** which an **insured** is legally obligated to pay as result of a covered **claim**. The limits of liability of the **underlying insurance** are set forth in Schedule of Underlying Insurance identified in ITEM 4 of the Declarations as amended by Endorsement No. 8 (the "Schedule of Underlying Insurance").

53. Subject to further restrictions in coverage in the **underlying insurance**, the 2018-19 Policy follows form to the **primary policy** identified in the Schedule of Underlying Insurance.

54. The 2018-19 Policy Schedule of Underlying Insurance at Endorsement No. 8 lists **primary policies**, including a "Buffer SIR" policy issued by Rockford Health Insurance Ltd., and **underlying insurance**, including a Healthcare Facility Excess Umbrella Liability Policy issued to Mercy Health by ProAssurance.

55. The 2018-19 Policy's Declarations Page states:

> **PORTIONS OF THIS POLICY APPLY ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO US DURING THE POLICY PERIOD. DEFENSE COSTS ARE PART OF AND NOT IN ADDITION TO THE LIMITS OF LIABILITY. *PLEASE READ THIS POLICY CAREFULLY.***

2018-19 Policy, Declarations (italics in original).

56. The Insuring Agreement in the 2018-19 Policy provides:

**I. INSURING AGREEMENT**

**We** will pay on behalf of the **insured**, up to the applicable Limit of Liability shown in ITEM 3 of the Declarations, any loss, damages, judgments, settlements, and defense costs in excess of the total limits of liability for all applicable **underlying insurance** which an **insured** is legally obligated to pay as result of a covered **claim**; provided, that:

(A) such **underlying insurance** also applies and has been exhausted by actual payment thereunder, or would apply but for the exhaustion of the total limits of liability thereunder;

(B) this Policy will apply in conformance with, and will follow the form of, the terms and conditions of the **primary policy** (including all endorsements thereto), and to the extent coverage is further limited or restricted by any other **underlying insurance**, of such **underlying insurance**, except:

(1) with respect to any provision to the contrary in this Policy;

(2) the applicable limits of liability of such **underlying insurance** shall be deemed to be reduced or exhausted solely as a result of payments for loss, damages, judgments, settlements, or defense costs that are covered under this Policy;

(3) the coverage provided by this Policy shall not be broader than any **underlying insurance** unless expressly provided in this Policy; and

(4) in all events, in the event that this Policy provides insurance excess of professional liability, the coverage afforded hereunder with respect to such professional liability coverage shall be deemed to apply on a claims-made and reported basis, regardless of whether the **primary policy** provides such coverage on a claims-made or occurrence basis;

(C) **we** will not have any obligation to make any payment hereunder unless and until the full amount of the total limits of liability of such **underlying insurance** has been paid by the issuer(s) of such **underlying insurance**, an **insured** or by another party on behalf, or for the benefit, of the **insured** or the issuer(s) of such **underlying insurance**; and

(D) **our** obligation to pay loss, damages, judgments, settlements, and defense costs as a result of a covered **claim** after the date of exhaustion of the full amount of the total limits of liability of such **underlying insurance** shall be excess of any applicable deductible or retention under the **underlying insurance**.

2018-19 Policy, Section I.

57.      The Insuring Agreement in the 2018-19 Policy requires that "in all events, in the event that this Policy provides insurance excess of professional liability, the coverage afforded hereunder with respect to such professional liability coverage shall be deemed to apply on a claims-made and reported basis, regardless of whether the **primary policy** provides such coverage on a claims-made or occurrence basis."  (Emphasis in underline added).

58.      Section V in the 2018-19 Policy states that:

**V. REPORTING OF CLAIMS AND CIRCUMSTANCES**

As a condition precedent to any right to coverage under this Policy, the **insured** must comply with the following:

(C)  the **insured** must provide **us** with written notice of any **claim** as soon as practicable, and in any event within the time period set forth by the **primary policy** with respect to notice of **claims**;

14

(B) the **insured** must provide **us** with written notice of any claim, loss, act, error, omission, circumstance, or other matter with respect to which notice has been provided under any **underlying insurance**[.]

…

59.     ITEM 6 in the Declarations of the 2018-19 Policy states:

ITEM 6. **ALL NOTICES REQUIRED TO BE GIVEN TO US UNDER SECTION V. REPORTING OF CLAIMS AND CIRCUMSTANCES OF THIS POLICY MUST BE ADDRESSED TO:**

Mari Spina
TDC Specialty Underwriters, Inc.
NoticeOfLoss@TDCSpecialty.com

**ALL OTHER NOTICES REQUIRED TO BE GIVEN TO US UNDER THIS POLICY MUST BE ADDRESSED TO:**

TDC Specialty Underwriters, Inc.
29 Mill Street, Suite 1.6
Unionville, CT 06085

60.     The ProAssurance policy, which is part of the **underlying insurance**, states in the definition of "**report, reported** and **reporting**" that, "[d]isclosure of incidents by an **insured** as a part of engineering or loss control services or claims audits made in connection with self-insured retention programs shall not be considered the **reporting** of a claim or **suit**."

61.     Condition IV.C.4. in the Claims Made Coverage Part A of the "Buffer SIR" policy to which the 2018-19 Policy follows form states that, as a condition precedent to coverage,

> 4.     You must also give us written notice as soon as practicable of any injury of the following types:
> …
> b.     unanticipated neurological, sensory and/or systemic deficits, brain damage, permanent paralysis including paraplegia and quadriplegia, partial or complete loss of sight or hearing, kidney failure or sepsis[.]

## COUNT I

### Declaration of No Coverage for the Neubauer Action Because
### It Was Not Reported During 2016-17 Policy Period

62.     TDCSI realleges and incorporates by reference the allegations of paragraphs 1 through 61 as if fully set forth in this Count I.

63.     The 2016-17 Policy Insuring Agreement requires that "in all events, in the event that this Policy provides insurance excess of professional liability, the coverage afforded hereunder with respect to such professional liability coverage shall be deemed to apply on a claims-made and reported basis, regardless of whether the **primary policy** provides such coverage on a claims-made or occurrence basis."  (Emphasis in underline added).

64.     A **claim** against any **insured** concerning the alleged injury to Aidan Neubauer was made no later than when the complaint in the Neubauer Action was filed on July 14, 2017.

65.     The first notice of the Neubauer Action was not made to TDCSI until April 20, 2020.  Therefore, the Neubauer Action was not reported to TDCSI during the 2016-17 **policy period**, as required to satisfy the 2016-17 Policy's Insuring Agreement.  Because the Insuring Agreement in the 2016-17 Policy was not satisfied, the 2016-17 Policy does not afford coverage for the Neubauer Action.

66.     TDCSI is therefore entitled to a declaration that the 2016-17 Policy does not afford coverage for the Neubauer Action because it is not a **claim** that was first made and reported during the 2016-17 **policy period**.

## COUNT II

### Declaration of No Coverage for the Reed Action Under The Policies
### Because The Alleged Brain Injury Was Not Reported As Soon As Practicable

67.     TDCSI realleges and incorporates by reference the allegations of paragraphs 1 through 61 as if fully set forth in this Count II.

68.     Because Faithe Reed allegedly suffered a brain injury as a result of her treatment at RMH in November 2016, the alleged injury should have been reported through written notice to TDCSI "as soon as practicable," pursuant to Condition IV.C.4. in the Claims Made Coverage Part A of the "Buffer SIR" in policies to which each of the TDCSI Policies follow form.

69.     Mercy Health has alleged that it first provided any writing to TDCSI regarding the alleged brain injury of Ms. Reed on September 26, 2018, when it sent TDCSI's claim administrator a copy of a loss run. Mercy Health sent the loss run that listed the Reed claim almost two years after the alleged brain injury incident.

70.     The alleged brain injury of Ms. Reed was not reported in writing to TDCSI as soon as practicable, which is a condition precedent to coverage under each of the TDCSI Policies.

71.     TDCSI is therefore entitled to a declaration that the Policies do not afford coverage for the Reed Action because Mercy Health failed to provide written notice to TDCSI of the alleged brain injury incident as soon as practicable.

## COUNT III

### In the Alternative, a Declaration of No Coverage for the Reed Action Because
### It Was Not Reported During 2017-18 Policy Period

72.     TDCSI realleges and incorporates by reference the allegations of paragraphs 1 through 61 as if fully set forth in this Count III.

73. The 2017-18 Policy Insuring Agreement requires that "in all events, in the event that this Policy provides insurance excess of professional liability, the coverage afforded hereunder with respect to such professional liability coverage shall be deemed to apply on a claims-made and reported basis, regardless of whether the **primary policy** provides such coverage on a claims-made or occurrence basis."  (Emphasis in underline added).

74. A **claim** against any **insured** concerning the alleged injury to Faithe Reed was made no later than when the complaint in the Reed Action was filed on June 27, 2018.

75. The Reed Action was not reported to TDCSI during the 2017-18 **policy period**, as required to satisfy the 2017-18 Policy's Insuring Agreement.

76. TDCSI is therefore entitled, in the alternative, to a declaration that the 2017-18 Policy does not afford coverage for the Reed Action because it is not a **claim** that was first made and reported during the 2017-18 **policy period**.

## COUNT IV

### In the Alternative, a Declaration of No Coverage for the Reed Action Because It Was Not Reported During 2018-19 Policy Period

77. TDCSI realleges and incorporates by reference the allegations of paragraphs 1 through 61 as if fully set forth in this Count IV.

78. The 2018-19 Policy Insuring Agreement requires that "in all events, in the event that this Policy provides insurance excess of professional liability, the coverage afforded hereunder with respect to such professional liability coverage shall be deemed to apply on a claims-made and reported basis, regardless of whether the **primary policy** provides such coverage on a claims-made or occurrence basis."  (Emphasis in underline added).

4846-4031-7407.3

79.     Mercy Health has alleged that no **claim** for the alleged injury to Ms. Reed was made against any **insured** until RMH was served with the complaint in the Reed Action on July 12, 2018, during the **policy period** of the 2018-19 Policy.

80.     Even if the **claim** for the alleged injury to Ms. Reed was first made during the 2018-19 **policy period**, no notice of such **claim** was <u>reported</u> to TDCSI during the 2018-19 **policy period** pursuant to the 2018-19 Policy provisions.

81.     The submission of a loss run to TDCSI's claim administrator does not satisfy the 2018-19 Policy's notice requirements.  The ProAssurance policy, which is part of the **underlying insurance** for the 2018-19 Policy and provides relevant restrictions in coverage, states in the definition of "**report, reported** and **reporting**" that, "[d]isclosure of incidents by an **insured** as a part of engineering or loss control services or claims audits made in connection with self-insured retention programs shall not be considered the **reporting** of a claim or **suit**."

82.     The 2018-19 Policy's **policy period** ended without Mercy Health having reported the Reed Action pursuant to the terms of the 2018-19 Policy.

83.     TDCSI is therefore entitled, in the alternative, to a declaration that the 2018-19 Policy does not afford coverage for the Reed Action because the alleged brain injury was not reported pursuant to the terms of the 2018-19 Policy during the 2018-19 **policy period**.

WHEREFORE, TDCSI respectfully requests:

A.      As to Count I, that the Court declare that the 2016-17 Policy does not afford coverage for the Neubauer Action because it is not a **claim** that was first made and reported to TDCSI during the 2016-17 **policy period**.

B.      As to Count II, that the Court declare that the Policies do not afford coverage for the Reed Action because Mercy Health failed to provide written notice to TDCSI

4846-4031-7407.3

of the alleged brain injury incident as soon as practicable, which is a condition

precedent to coverage under each of the Policies.

C.      As to Count III, that the Court declare, in the alternative, that the 2017-18 Policy

does not afford coverage for the Reed Action because it is not a **claim** that was

first made and reported to TDCSI during the 2017-18 **policy period**.

D.      As to Count IV, that the Court declare, in the alternative, that the 2018-19 Policy

does not afford coverage for the Reed Action because it is not a **claim** that was

first made and reported to TDCSI during the 2018-19 **policy period**.

E.      That the Court award TDCSI such other and further relief as it may deem

appropriate.

Dated this 19th day of March, 2021

                                                        Respectfully submitted,

                                                        /s/James J. Stamos
                                                        _____
*Of Counsel:*                                            James J. Stamos (ARDC No. 03128244)
Mary E. Borja                                            Stamos & Trucco
Wiley Rein LLP                                           1  East Wacker Drive
1776 K Street NW                                         Third Floor
Washington, DC 20006                                     Chicago IL  60601
(202) 719-7000 (tel.)                                    312-630-7979 (tel.)
(202) 719-7049 (fax)                                     312-630-1183 (fax)
mborja@wileyrein.com                                     jstamos@stamostrucco.com

                                                        *Counsel for Plaintiff TDC Specialty
                                                        Insurance Company*

20

# Ex. A



**Follow Form Excess Policy**

Mercy Health Corporation

HPX-00001-16-00

09/01/2016 - 09/01/2017

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
## ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC.  **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy based on Presidential declarations of "national emergency."  OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons."  This list can be located on the United States Treasury's web site – https://www.treasury.gov/ofac

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



| | Underwritten by TDC Specialty Insurance Company<br>1050 K Street, Suite 400<br>Washington, DC 20001<br>Servicing Address: 29 Mill Street<br>Unionville, CT 06085 |

## DECLARATIONS

## FOLLOW FORM EXCESS POLICY

**PORTIONS OF THIS POLICY APPLY ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO US DURING THE POLICY PERIOD. DEFENSE COSTS ARE PART OF AND NOT IN ADDITION TO THE LIMITS OF LIABILITY.** *PLEASE READ THIS POLICY CAREFULLY.*

**Policy Number:** HPX-00001-16-00

| ITEM 1. **INSURED**<br>Name and Principal Address:<br>Mercy Health Corporation<br>2400 N. Rockton Ave<br>Rockford, IL 61103 | ITEM 2. **POLICY PERIOD:**<br><br>(a) Inception Date     09/01/2016<br>(b) Expiration Date     09/01/2017<br> Both dates at 12:01 a.m. at the Principal<br> Address in ITEM 1 |

ITEM 3.   **LIMITS OF LIABILITY**

 (A)  Each **claim** Limit of Liability          $10,000,000
 (B)  Policy Aggregate Limit of Liability     $10,000,000

ITEM 4.   **UNDERLYING INSURANCE**

 See Endorsement No. 1 – Schedule of Underlying Insurance

ITEM 5.   **PREMIUM:** ███████

   X  *Gross Premium:*     **We will pay a percentage of the Premium shown above as brokerage commission. Consult your broker for information concerning commission.**
   __ *Net Premium:*     **The premium shown above is net, and we will pay no brokerage commission of any kind thereon.**

ITEM 6.   **ALL NOTICES REQUIRED TO BE GIVEN TO US UNDER SECTION V. REPORTING OF CLAIMS AND CIRCUMSTANCES OF THIS POLICY MUST BE ADDRESSED TO:**

 Mari Spina
 TDC Specialty Underwriters, Inc.
 NoticeOfLoss@TDCSpecialty.com

  **ALL OTHER NOTICES REQUIRED TO BE GIVEN TO US UNDER THIS POLICY MUST BE ADDRESSED TO:**

 TDC Specialty Underwriters, Inc.
 29 Mill Street, Suite 1.6
 Unionville, CT 06085

ITEM 7.   **POLICY FORM AND ENDORSEMENTS ATTACHED AT ISSUANCE:**

HXF-000001-08-16
HXE-000010-09-16
HXE-000003-04-16
HXE-000006-08-16
HXE-000012-09-16
HXE-000027-06-17

These Declarations, the completed signed Application, and the Policy (together with any and all endorsements thereto) shall constitute the entire agreement between **us** and the **insured(s)**.

**TDC Specialty Insurance Company**
By:

_____

Its Authorized Representative

07/07/2017

Date:



| | Underwritten by TDC Specialty Insurance Company |
| --- | --- |
| | 1050 K Street, Suite 400 |
| | Washington, DC 20001 |
| | Servicing Address: 29 Mill Street |
| | Unionville, CT 06085 |

## FOLLOW FORM EXCESS POLICY

**PORTIONS OF THIS POLICY APPLY ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO US DURING THE POLICY PERIOD OR, SOLELY IF APPLICABLE, ANY EXTENSION PERIOD FOR REPORTING CLAIMS. DEFENSE COSTS ARE PART OF AND NOT IN ADDITION TO THE LIMITS OF LIABILITY. DEFENSE COSTS WILL REDUCE AND MAY EXHAUST COMPLETELY THE LIMIT OF LIABILITY. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

In consideration of the payment of the premium, and in reliance upon all statements made and information furnished to **us** and to any issuer of the **underlying insurance**, and subject to all of the terms and conditions of this Policy (including all endorsements attached hereto), **we** and the **insured** agree as follows:

**I.     INSURING AGREEMENT**

**We** will pay on behalf of the **insured**, up to the applicable Limit of Liability shown in ITEM 3 of the Declarations, any loss, damages, judgments, settlements, and defense costs in excess of the total limits of liability for all applicable **underlying insurance** which an **insured** is legally obligated to pay as result of a covered **claim**; provided, that:

(A)     such **underlying insurance** also applies and has been exhausted by actual payment thereunder, or would apply but for the exhaustion of the total limits of liability thereunder;

(B)     this Policy will apply in conformance with, and will follow the form of, the terms and conditions of the **primary policy** (including all endorsements thereto), and to the extent coverage is further limited or restricted by any other **underlying insurance**, of such **underlying insurance**, except:

(1)     with respect to any provision to the contrary in this Policy;

(2)     the applicable limits of liability of such **underlying insurance** shall be deemed to be reduced or exhausted solely as a result of payments for loss, damages, judgments, settlements, or defense costs that are covered under this Policy;

(3)     the coverage provided by this Policy shall not be broader than any **underlying insurance** unless expressly provided in this Policy; and

(4)     in all events, in the event that this Policy provides insurance excess of professional liability, the coverage afforded hereunder with respect to such professional liability coverage shall be deemed to apply on a claims-made and reported basis, regardless of whether the **primary policy** provides such coverage on a claims-made or occurrence basis;

(C)     **we** will not have any obligation to make any payment hereunder unless and until the full amount of the total limits of liability of such **underlying insurance** has been paid by the issuer(s) of such **underlying insurance**, an **insured** or by another

party on behalf, or for the benefit, of the **insured** or the issuer(s) of such **underlying insurance**; and

(D)     **our** obligation to pay loss, damages, judgments, settlements, and defense costs as a result of a covered **claim** after the date of exhaustion of the full amount of the total limits of liability of such **underlying insurance** shall be excess of any applicable deductible or retention under the **underlying insurance**.

## II.    DEFINITIONS

(A)     **Claim** shall have the meaning ascribed to it (or similar term) in the applicable **underlying insurance**.

(B)     **Insured** means any person or entity included within the definition of "Insured" (or similar term) in the applicable **underlying insurance**.

(C)     **Policy period** means the period of time from the Inception Date of this Policy stated in ITEM 2(a) of the Declarations to the Expiration Date of this Policy stated in ITEM 2(b) of the Declarations, or to any earlier cancellation or termination date of this Policy.

(D)     **Primary policy** means the policy scheduled as such in ITEM 4(A) of the Declarations.

(E)     **Underlying insurance** means the **primary policy** and all insurance policies, bonds, self-insurance programs, trust agreements, or other risk transfer arrangements scheduled in ITEM 4 of the Declarations, and all renewals or replacements thereof.

(F)     **We, us** and **our** means the Underwriting Company as set forth in the Declarations.

## III.    UNDERLYING INSURANCE

(A)     As long as this Policy is in effect, all **underlying insurance** must: (1) continuously be kept in full force and effect; (2) provide no less coverage than provided by all of the insurance policies, bonds, self-insurance programs, trust agreements, or other risk transfer arrangements scheduled in ITEM 4 of the Declarations; (3) provide no lower limits of liability than those scheduled in ITEM 4 of the Declarations (except to the extent such limits are reduced or exhausted due to the payment of covered **claims** under such **underlying insurance**); and (4) be available and collectible. If the **underlying insurance** fails to meet any such criteria in (1) through (4) above, then **we** shall not be liable under this Policy earlier or to any greater extent than **we** would have been if such **underlying insurance** was still in full force and effect, contained its original provisions, had the original scheduled limits of liability, and was fully available and collectible.

(B)     No amendment or modification to any **underlying insurance** shall be binding upon **us** or effective in changing the terms and conditions of, or extending the coverage or limits of liability afforded by, this Policy without **our** express written agreement. The **insured** shall provide **us** with: (1) prompt notice of any payment of any **claim** under any **underlying insurance**; (2) any cancellation, termination, or non-renewal of any **underlying insurance**; or (3) any change in or modification of any **underlying insurance** by endorsement or otherwise. This Policy shall automatically be rescinded upon the rescission of any **underlying insurance**.

(C)    If any **underlying insurance** (including any endorsement(s) attached thereto) contains an insuring agreement or a grant of coverage with a limit of liability of a lesser amount than the applicable "Each Claim" limit of liability scheduled in ITEM 4 of the Declarations, then this Policy will not follow form of, and shall not apply to, such insuring agreement or grant of coverage, and no payment made under such insuring agreement or grant of coverage shall reduce or exhaust the applicable limits of liability of such **underlying insurance**.

## IV.    LIMITS OF LIABILITY AND EXHAUSTION OF LIMITS

(A)    **Each Claim Limit of Liability**.  The amount stated in ITEM 3(A) of the Declarations shall be **our** maximum Limit of Liability for all loss, damages, judgments, settlements and defense costs from each **claim** for which this Policy provides coverage.  This Limit of Liability shall be part of, and not in addition to, the Policy Aggregate Limit of Liability stated in ITEM 3(B) of the Declarations.

(B)    **Policy Aggregate Limit of Liability**.  The amount stated in ITEM 3(B) of the Declarations shall be **our** maximum aggregate Limit of Liability for all loss, damages, judgments, settlements and defense costs from all **claims** for which this Policy provides coverage.

(C)    Defense costs are part of, and not in addition to **our** applicable Limits of Liability, and **our** payment of defense costs will reduce, and may exhaust, this Policy's applicable Limits of Liability.

(D)    **We** will have no obligation to pay any loss, damages, judgments, settlements, or defense costs after the Policy Aggregate Limit of Liability stated in ITEM 3(B) of the Declarations has been exhausted by payments under this Policy.  If the Policy Aggregate Limit of Liability is exhausted by payments under this Policy, the premium will be fully earned, all of **our** obligations under this Policy will be completed fulfilled and exhausted, and **we** will have no further obligations of any type, nature, or kind under this Policy.

## V.    REPORTING OF CLAIMS AND CIRCUMSTANCES

As a condition precedent to any right to coverage under this Policy, the **insured** must comply with the following:

(A)    the **insured** must provide **us** with written notice of any **claim** as soon as practicable, and in any event within the time period set forth by the **primary policy** with respect to notice of **claims**;

(B)    the **insured** must provide **us** with written notice of any claim, loss, act, error, omission, circumstance, or other matter with respect to which notice has been provided under any **underlying insurance**; and

(C)    if, during the **policy period**, the **insured** first becomes aware of any facts or circumstances that might subsequently give rise to a **claim** and the **insured** exercises any right under the **underlying insurance** to report such facts or circumstances, then the **insured** must also report such facts or circumstances to **us** as soon as practicable but in any event before the Expiration Date or earlier cancellation or termination of this Policy.  Any covered **claim** subsequently made against the **insured** arising out of such facts or circumstances (and for which written notice is given to **us** as soon as practicable thereafter) shall be treated as if it had been first made and reported to **us** during the **policy period**, provided that

the applicable **underlying insurance** is also treating such **claim** as if it had been first made and reported during the **policy period**.

## VI.   CANCELLATION AND NON-RENEWAL

(A)   The **insured** may cancel this Policy at any time by delivering by hand delivery or overnight mail service or by mailing registered, certified, or other first-class mail, written notice stating when thereafter, and prior to the Expiration Date of this Policy, such cancellation is to be effective.

(B)   **We** shall cancel this Policy only in accordance with the terms and conditions of the **primary policy**.

(C)   If this Policy is cancelled by the **insured**, **we** shall refund any unearned premium computed at the customary short rate table and procedure.  Under all other circumstances, any unearned premium shall be computed pro rata.

(D)   **We** will not be required to renew this Policy upon its expiration.

## VII.   OTHER TERMS AND CONDITIONS

(A)   With respect to any **claim** that is reasonably likely to involve the coverage afforded by this Policy, the **insured** shall not settle such **claim**, or incur any expense, make any payment, admit any liability, or assume any obligation with respect to such **claim**, without **our** prior written consent.

(B)   **We** have the right to associate in the defense, investigation, or settlement of any **claim**, even if the limits of liability of the **underlying insurance** have not been exhausted.  If **we** elect to associate in the defense, investigation, or settlement of a **claim**, the **insured** will cooperate with **us** and provide **us** with all information **we** reasonably request.

(C)   In the event of any payment under this Policy, **we** shall be subrogated to the extent of any payment to all of the **insured's** rights of recovery. The **insured** must do everything necessary to secure these rights, including but not limited to executing all documents necessary to secure such rights.  The **insured** shall do nothing that may prejudice **our** position or potential or actual rights of recovery. The obligations of the **insured** under this provision shall survive the expiration or termination of this Policy.

(D)   The person or entity first named in ITEM 1 of the Declarations will act on behalf of all **insureds** with respect to: the giving and receiving of any notices and other communications under this Policy; the payment of premiums to, and receiving of return premiums from, **us**; and the receiving and acceptance of any endorsements issued to form a part of this Policy.

(E)   The **insured** represents that the particulars and statements contained in the application submitted in connection with this Policy or with any **underlying insurance** are true, accurate and complete, and agree that: (1) this Policy is issued and continued in force by **us** in reliance on the truth of that representation; (2) those particulars and statements are the basis of this Policy; and (3) such application and those particulars and statements are incorporated into and form a part of this Policy.

**In Witness Whereof, we have caused this Policy to be executed by our authorized officers**.



| | Underwritten by TDC Specialty Insurance Company |
|---|---|
| | 1050 K Street, Suite 400 |
| | Washington, DC 20001 |
| | Servicing Address: 29 Mill Street |
| | Unionville, CT 06085 |

ENDORSEMENT NO. 1
SCHEDULE OF UNDERLYING INSURANCE ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 09/01/2016, forms part of

|  |  |
|---|---|
| Policy Number: | HPX-00001-16-00 |
| Issued to: | Mercy Health Corporation |
| Issued by: | TDC Specialty Insurance Company |

In consideration of the premium charged, ITEM 4 of the Declarations is amended to read in its entirety as follows:

ITEM 4. **UNDERLYING INSURANCE**

(A) **Primary Policy:**

| Insurer: | Coverage: | Policy Number: | Policy Period: | Limits of Liability: | Deductible or Retention: |
|---|---|---|---|---|---|
| SIR | Professional Liability | Not Applicable | 09/01/2016 – 09/01/2017 | Not Applicable | $3,000,000 Each Claim SIR Limit of Liability $9,000,000 Aggregate SIR Limit of Liability |
| Buffer SIR | Professional Liability | RHL-RPL 1001/15 | 09/01/2016 – 09/01/2017 | Not Applicable | $1,000,000 Buffer SIR $2,000,000 Buffer SIR Aggregate |
| SIR | General Liability including Employee Benefits Liability | Not Applicable | 09/01/2016 – 09/01/2017 | Not Applicable | $2,000,000 Each and Every Claim |
| SIR | Managed Care Liability (Legacy Rockford) | Not Applicable | 09/01/2016 – 09/01/2017 | Not Applicable | $2,000,000 Each and Every Claim |
| ProAssurance Casualty | Hospital & Physician Professional Liability and General Liability (including Employee | HP2101 | 07/01/2016 – 07/01/2017 | $1,000,000 Each Claim Limit of Liability $3,000,000 Aggregate Limit of Liability | Not Applicable |

| | Benefits Liability) | | | $1,000,000 Excess of $1,000,000/ $3,000,000 Aggregate | |
|---|---|---|---|---|---|
| Federal Insurance Company | Automobile Liability | 1673568649 | 07/01/2016 – 07/01/2017 | $1,000,000 Combined Single Limit | Not Applicable |
| Global Aerospace | Heliport Liability | 13000074 | 01/01/2016 – 01/01/2017 | $30,000,000 Each Claim Limit of Liability | Not Applicable |
| Global Aerospace | Non-Owned Aviation Liability | 13000075 | 01/01/2016 – 01/01/2017 | $10,000,000 Each Claim Limit of Liability | Not Applicable |
| Safety National | Employer's Liability (Legacy Rockford) | SP4054359 | 01/01/2016 – 01/01/2017 | $1,000,000 Each Employee $1,000,000 Each Accident $1,000,000 Aggregate | $600,000 SIR $150,000 Buffer SIR |
| Travelers | Employer's Liability (Legacy Mercy) | TRJUB1109L 84916 | 07/01/2016 – 07/01/2017 | $1,000,000 Each Employee $1,000,000 Each Accident $1,000,000 Aggregate | Not Applicable |
| Atlantic Specialty Insurance Company | Managed Care Liability (Legacy Mercy) | MCR877216 | 07/01/2016 – 07/01/2017 | $5,000,000 Each Claim Limit of Liability $5,000,000 Aggregate Limit of Liability | $50,000 |

(B) **Underlying Insurance:**

| Insurer: | Coverage: | Policy Number: | Policy Period: | Limits of Liability: | Deductible or Retention: |
|---|---|---|---|---|---|
| ProAssurance Specialty Insurance Company, Inc. | Healthcare Facility Excess Umbrella Liability | HP2113 | 09/01/2016 – 09/01/2017 | $10,000,000 Each Claim Limit of Liability $10,000,000 Aggregate Limit of Liability | $50,000 |
| Homeland Insurance Company of New York | Healthcare Facility Excess Umbrella Liability | MPX395816 | 09/01/2016 – 09/01/2017 | $10,000,000 Each Claim Limit of Liability $10,000,000 Aggregate Limit of Liability | Not Applicable |

All other terms, conditions and limitations of this Policy shall remain unchanged.



| | Underwritten by TDC Specialty Insurance Company |
|---|---|
| | 1050 K Street, Suite 400 |
| | Washington, DC 20001 |
| | Servicing Address: 29 Mill Street |
| | Unionville, CT 06085 |

ENDORSEMENT NO. 2
RETROACTIVE DATE ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 09/01/2016, forms part of

      Policy Number:   HPX-00001-16-00
      Issued to:         Mercy Health Corporation
      Issued by:        TDC Specialty Insurance Company

In consideration of the premium charged:

(1)    Notwithstanding any provision to the contrary in this Policy, it is understood and agreed that no coverage will be available under this Policy for any **claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any wrongful act or occurrence that happened prior to the **retroactive date**.

(2)    For purposes of determining when the coverage afforded under this Policy shall attach, it is understood and agreed that the limits of liability of the **underlying insurance** will be deemed to have been eroded (or exhausted) by payment of loss, damages, judgments, settlements, or defense costs in connection with any **claim** not covered under this Policy pursuant to paragraph (1) of this endorsement.

(3)    For purposes of this endorsement, the term "**retroactive date**" means 09/01/2000.

All other terms, conditions and limitations of this Policy shall remain unchanged.



Underwritten by TDC Specialty Insurance Company
1050 K Street, Suite 400
Washington, DC 20001
Servicing Address: 29 Mill Street
Unionville, CT 06085

ENDORSEMENT NO. 3
CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 09/01/2016, forms part of

Policy Number:  HPX-00001-16-00
Issued to:  Mercy Health Corporation
Issued by:  TDC Specialty Insurance Company

In consideration of the premium charged:

(1)  If aggregate insured losses attributable to **certified acts of terrorism** (as defined below) exceed $100 billion in a calendar year and **we** have met our insurer deductible under the Terrorism Risk Insurance Act ("the Act"), **we** shall not be liable for the payment of any portion of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro-rata allocation in accordance with procedures established by the Secretary of the Treasury.

(2)  Notwithstanding paragraph (1) above, it is understood and agreed that in the event there is no coverage for losses attributable to **certified acts of terrorism** under any **underlying insurance** due to an exclusion in such **underlying insurance**, then no coverage is available under this Policy for any **claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any **certified act of terrorism**.

(3)  For purposes of this endorsement, the following term shall have the meaning set forth below and Section II DEFINITIONS of this Policy shall be deemed amended to include such term:

"**Certified act of terrorism**" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the Act, to be an act of terrorism pursuant to the Act. The criteria contained in the Act for a "certified act of terrorism" include the following:

(a)  the act resulted in insured losses in excess of $5,000,000 in the aggregate, attributable to all types of insurance subject to the Act; and

(b)  the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms, conditions and limitations of this Policy shall remain unchanged.



**Underwritten by TDC Specialty Insurance Company**
**1050 K Street, Suite 400**
**Washington, DC 20001**
**Servicing Address: 29 Mill Street**
**Unionville, CT 06085**

ENDORSEMENT NO. 4
SERVICE OF SUIT ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 09/01/2016, forms part of

        Policy Number:     HPX-00001-16-00
        Issued to:            Mercy Health Corporation
        Issued by:            TDC Specialty Insurance Company

In consideration of the premium charged, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, **we** hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose by statute, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the **insured**, or any beneficiary hereunder, arising out of this contract of insurance.

All other terms, conditions and limitations of this Policy shall remain unchanged.



| | |
|---|---|
| | **Underwritten by TDC Specialty Insurance Company**<br>**1050 K Street, Suite 400**<br>**Washington, DC 20001**<br>**Servicing Address: 29 Mill Street**<br>**Unionville, CT 06085** |

ENDORSEMENT NO. 5
MAILING ADDRESS ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 09/01/2016, forms part of

        Policy Number:     HPX-00001-16-00
        Issued to:           Mercy Health Corporation
        Issued by:           TDC Specialty Insurance Company

In consideration of the premium charged:

(1)     Notwithstanding any provision to the contrary in this Policy, it is understood and agreed that any and all correspondence required under, or in connection with, this Policy shall be mailed to the following entity at the following address:

        Mercy Health Corporation

        1000 Mineral Point Avenue

        Janesville, WI 53548

(2)     It is understood and agreed that any and all correspondence required under, or in connection with, this Policy that is mailed to the entity at the address stated in paragraph (1) of this endorsement shall be deemed correspondence mailed to the person or entity first named in ITEM 1 of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

# Ex. B



Hospital Follow Form Excess Liability

Mercy Health Corporation

HPX-00001-17-01

09/01/2017 - 07/01/2018

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC.  **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy based on Presidential declarations of "national emergency."  OFAC has identified and listed numerous:

- Foreign agents;

- Front organizations;

- Terrorists;

- Terrorist organizations; and

- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons."  This list can be located on the United States Treasury's web site – https://www.treasury.gov/ofac

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



| | Underwritten by: TDC Specialty Insurance Company |
|---|---|
| | 1050 K Street, Suite 400 |
| | Washington, DC 20001 |
| | Servicing Address: 29 Mill Street |
| | Unionville, CT 06085 |

## DECLARATIONS

## FOLLOW FORM EXCESS POLICY

**PORTIONS OF THIS POLICY APPLY ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO US DURING THE POLICY PERIOD. DEFENSE COSTS ARE PART OF AND NOT IN ADDITION TO THE LIMITS OF LIABILITY.** *PLEASE READ THIS POLICY CAREFULLY.*

**Policy Number:** HPX-00001-17-01

| ITEM 1. | **INSURED** | ITEM 2. | **POLICY PERIOD** |
|---|---|---|---|
| | Name and Principal Address | | |
| | Mercy Health Corporation | | (a) Inception Date    09/01/2017 |
| | 2400 N. Rockton Ave. | | (b) Expiration Date    07/01/2018 |
| | Rockford, IL 61103 | | Both dates at 12:01 a.m. at the Principal Address in ITEM 1 |

**ITEM 3.    LIMITS OF LIABILITY**

| (A) Each **claim** Limit of Liability | $10,000,000 |
|---|---|
| (B) Policy Aggregate Limit of Liability | $10,000,000 |

**ITEM 4.    UNDERLYING INSURANCE**

See Endorsement No. 1 - Schedule of Underlying Insurance

**ITEM 5.    PREMIUM:**    ███████

☒ *Gross Premium:*    **We will pay a percentage of the Premium shown above as brokerage commission. Consult your broker for information concerning commission.**

☐ *Net Premium:*    **The premium shown above is net, and we will pay no brokerage commission of any kind thereon.**

| ITEM 6. | **ALL NOTICES REQUIRED TO BE GIVEN TO US UNDER SECTION V. REPORTING OF CLAIMS AND CIRCUMSTANCES OF THIS POLICY MUST BE ADDRESSED TO:** |
| --- | --- |
| | Mari Spina<br>TDC Specialty Underwriters, Inc.<br>NoticeOfLoss@TDCSpecialty.com |
| | **ALL OTHER NOTICES REQUIRED TO BE GIVEN TO US UNDER THIS POLICY MUST BE ADDRESSED TO:** |
| | TDC Specialty Underwriters, Inc.<br>29 Mill Street, Suite 1.6<br>Unionville, CT 06085 |
| ITEM 7. | **POLICY FORM AND ENDORSEMENTS ATTACHED AT ISSUANCE:** |
| | HXF-000001-08-16 |
| | HXE-000010-09-16 |
| | HXE-000003-04-16 |
| | HXE-000006-08-16 |
| | HXE-000012-09-16 |
| | HXE-000027-06-27 |

These Declarations, the completed signed **Application**, and the Policy (together with any and all endorsements thereto) shall constitute the entire agreement between **you** and **us**.

**TDC Specialty Insurance Company**
By:

_W. A Je_

| Its Authorized Representative | 06/08/2018 |
| --- | --- |
| | Date: |



| | Underwritten by: **TDC Specialty Insurance Company**<br>**1050 K Street, Suite 400**<br>**Washington, DC 20001**<br>**Servicing Address: 29 Mill Street**<br>**Unionville, CT 06085** |

## FOLLOW FORM EXCESS POLICY

**PORTIONS OF THIS POLICY APPLY ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO US DURING THE POLICY PERIOD OR, SOLELY IF APPLICABLE, ANY EXTENSION PERIOD FOR REPORTING CLAIMS. DEFENSE COSTS ARE PART OF AND NOT IN ADDITION TO THE LIMITS OF LIABILITY. DEFENSE COSTS WILL REDUCE AND MAY EXHAUST COMPLETELY THE LIMIT OF LIABILITY. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

In consideration of the payment of the premium, and in reliance upon all statements made and information furnished to **us** and to any issuer of the **underlying insurance**, and subject to all of the terms and conditions of this Policy (including all endorsements attached hereto), **we** and the **insured** agree as follows:

**I. INSURING AGREEMENT**

**We** will pay on behalf of the **insured**, up to the applicable Limit of Liability shown in ITEM 3 of the Declarations, any loss, damages, judgments, settlements, and defense costs in excess of the total limits of liability for all applicable **underlying insurance** which an **insured** is legally obligated to pay as result of a covered **claim**; provided, that:

(A) such **underlying insurance** also applies and has been exhausted by actual payment thereunder, or would apply but for the exhaustion of the total limits of liability thereunder;

(B) this Policy will apply in conformance with, and will follow the form of, the terms and conditions of the **primary policy** (including all endorsements thereto), and to the extent coverage is further limited or restricted by any other **underlying insurance**, of such **underlying insurance**, except:

(1) with respect to any provision to the contrary in this Policy;

(2) the applicable limits of liability of such **underlying insurance** shall be deemed to be reduced or exhausted solely as a result of payments for loss, damages, judgments, settlements, or defense costs that are covered under this Policy;

(3) the coverage provided by this Policy shall not be broader than any **underlying insurance** unless expressly provided in this Policy; and

(4) in all events, in the event that this Policy provides insurance excess of professional liability, the coverage afforded hereunder with respect to such professional liability coverage shall be deemed to apply on a claims-made and reported basis, regardless of whether the **primary policy** provides such coverage on a claims-made or occurrence basis;

(C) **we** will not have any obligation to make any payment hereunder unless and until the full amount of the total limits of liability of such **underlying insurance** has been paid by the issuer(s) of such **underlying insurance**, an **insured** or by another

party on behalf, or for the benefit, of the **insured** or the issuer(s) of such **underlying insurance**; and

(D) **our** obligation to pay loss, damages, judgments, settlements, and defense costs as a result of a covered **claim** after the date of exhaustion of the full amount of the total limits of liability of such **underlying insurance** shall be excess of any applicable deductible or retention under the **underlying insurance**.

## II. DEFINITIONS

(A) **Claim** shall have the meaning ascribed to it (or similar term) in the applicable **underlying insurance**.

(B) **Insured** means any person or entity included within the definition of "Insured" (or similar term) in the applicable **underlying insurance**.

(C) **Policy period** means the period of time from the Inception Date of this Policy stated in ITEM 2(a) of the Declarations to the Expiration Date of this Policy stated in ITEM 2(b) of the Declarations, or to any earlier cancellation or termination date of this Policy.

(D) **Primary policy** means the policy scheduled as such in ITEM 4(A) of the Declarations.

(E) **Underlying insurance** means the **primary policy** and all insurance policies, bonds, self-insurance programs, trust agreements, or other risk transfer arrangements scheduled in ITEM 4 of the Declarations, and all renewals or replacements thereof.

(F) **We, us** and **our** means the Underwriting Company as set forth in the Declarations.

## III. UNDERLYING INSURANCE

(A) As long as this Policy is in effect, all **underlying insurance** must: (1) continuously be kept in full force and effect; (2) provide no less coverage than provided by all of the insurance policies, bonds, self-insurance programs, trust agreements, or other risk transfer arrangements scheduled in ITEM 4 of the Declarations; (3) provide no lower limits of liability than those scheduled in ITEM 4 of the Declarations (except to the extent such limits are reduced or exhausted due to the payment of covered **claims** under such **underlying insurance**); and (4) be available and collectible. If the **underlying insurance** fails to meet any such criteria in (1) through (4) above, then **we** shall not be liable under this Policy earlier or to any greater extent than **we** would have been if such **underlying insurance** was still in full force and effect, contained its original provisions, had the original scheduled limits of liability, and was fully available and collectible.

(B) No amendment or modification to any **underlying insurance** shall be binding upon **us** or effective in changing the terms and conditions of, or extending the coverage or limits of liability afforded by, this Policy without **our** express written agreement. The **insured** shall provide **us** with: (1) prompt notice of any payment of any **claim** under any **underlying insurance**; (2) any cancellation, termination, or non-renewal of any **underlying insurance**; or (3) any change in or modification of any **underlying insurance** by endorsement or otherwise. This Policy shall automatically be rescinded upon the rescission of any **underlying insurance**.

(C)    If any **underlying insurance** (including any endorsement(s) attached thereto) contains an insuring agreement or a grant of coverage with a limit of liability of a lesser amount than the applicable "Each Claim" limit of liability scheduled in ITEM 4 of the Declarations, then this Policy will not follow form of, and shall not apply to, such insuring agreement or grant of coverage, and no payment made under such insuring agreement or grant of coverage shall reduce or exhaust the applicable limits of liability of such **underlying insurance**.

## IV.    LIMITS OF LIABILITY AND EXHAUSTION OF LIMITS

(A)    **Each Claim Limit of Liability**.  The amount stated in ITEM 3(A) of the Declarations shall be **our** maximum Limit of Liability for all loss, damages, judgments, settlements and defense costs from each **claim** for which this Policy provides coverage.  This Limit of Liability shall be part of, and not in addition to, the Policy Aggregate Limit of Liability stated in ITEM 3(B) of the Declarations.

(B)    **Policy Aggregate Limit of Liability**.  The amount stated in ITEM 3(B) of the Declarations shall be **our** maximum aggregate Limit of Liability for all loss, damages, judgments, settlements and defense costs from all **claims** for which this Policy provides coverage.

(C)    Defense costs are part of, and not in addition to **our** applicable Limits of Liability, and **our** payment of defense costs will reduce, and may exhaust, this Policy's applicable Limits of Liability.

(D)    **We** will have no obligation to pay any loss, damages, judgments, settlements, or defense costs after the Policy Aggregate Limit of Liability stated in ITEM 3(B) of the Declarations has been exhausted by payments under this Policy.  If the Policy Aggregate Limit of Liability is exhausted by payments under this Policy, the premium will be fully earned, all of **our** obligations under this Policy will be completely fulfilled and exhausted, and **we** will have no further obligations of any type, nature, or kind under this Policy.

## V.    REPORTING OF CLAIMS AND CIRCUMSTANCES

As a condition precedent to any right to coverage under this Policy, the **insured** must comply with the following:

(A)    the **insured** must provide **us** with written notice of any **claim** as soon as practicable, and in any event within the time period set forth by the **primary policy** with respect to notice of **claims**;

(B)    the **insured** must provide **us** with written notice of any claim, loss, act, error, omission, circumstance, or other matter with respect to which notice has been provided under any **underlying insurance**; and

(C)    if, during the **policy period**, the **insured** first becomes aware of any facts or circumstances that might subsequently give rise to a **claim** and the **insured** exercises any right under the **underlying insurance** to report such facts or circumstances, then the **insured** must also report such facts or circumstances to **us** as soon as practicable but in any event before the Expiration Date or earlier cancellation or termination of this Policy.  Any covered **claim** subsequently made against the **insured** arising out of such facts or circumstances (and for which written notice is given to **us** as soon as practicable thereafter) shall be treated as if it had been first made and reported to **us** during the **policy period**, provided that

the applicable **underlying insurance** is also treating such **claim** as if it had been first made and reported during the **policy period**.

## VI. CANCELLATION AND NON-RENEWAL

(A) The **insured** may cancel this Policy at any time by delivering by hand delivery or overnight mail service or by mailing registered, certified, or other first-class mail, written notice stating when thereafter, and prior to the Expiration Date of this Policy, such cancellation is to be effective.

(B) **We** shall cancel this Policy only in accordance with the terms and conditions of the **primary policy**.

(C) If this Policy is cancelled by the **insured**, **we** shall refund any unearned premium computed at the customary short rate table and procedure. Under all other circumstances, any unearned premium shall be computed pro rata.

(D) **We** will not be required to renew this Policy upon its expiration.

## VII. OTHER TERMS AND CONDITIONS

(A) With respect to any **claim** that is reasonably likely to involve the coverage afforded by this Policy, the **insured** shall not settle such **claim**, or incur any expense, make any payment, admit any liability, or assume any obligation with respect to such **claim**, without **our** prior written consent.

(B) **We** have the right to associate in the defense, investigation, or settlement of any **claim**, even if the limits of liability of the **underlying insurance** have not been exhausted. If **we** elect to associate in the defense, investigation, or settlement of a **claim**, the **insured** will cooperate with **us** and provide **us** with all information **we** reasonably request.

(C) In the event of any payment under this Policy, **we** shall be subrogated to the extent of any payment to all of the **insured's** rights of recovery. The **insured** must do everything necessary to secure these rights, including but not limited to executing all documents necessary to secure such rights. The **insured** shall do nothing that may prejudice **our** position or potential or actual rights of recovery. The obligations of the **insured** under this provision shall survive the expiration or termination of this Policy.

(D) The person or entity first named in ITEM 1 of the Declarations will act on behalf of all **insureds** with respect to: the giving and receiving of any notices and other communications under this Policy; the payment of premiums to, and receiving of return premiums from, **us**; and the receiving and acceptance of any endorsements issued to form a part of this Policy.

(E) The **insured** represents that the particulars and statements contained in the application submitted in connection with this Policy or with any **underlying insurance** are true, accurate and complete, and agree that: (1) this Policy is issued and continued in force by **us** in reliance on the truth of that representation; (2) those particulars and statements are the basis of this Policy; and (3) such application and those particulars and statements are incorporated into and form a part of this Policy.

**In Witness Whereof, we have caused this Policy to be executed by our authorized officers**.



| | **Underwritten by TDC Specialty Insurance Company** |
|---|---|
| | 1050 K Street, Suite 400 |
| | Washington, DC 20001 |
| | Servicing Address: 29 Mill Street |
| | Unionville, CT 06085 |

ENDORSEMENT NO. 1
SCHEDULE OF UNDERLYING INSURANCE ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 09/01/2017, forms part of

| Policy Number: | HPX-00001-17-01 |
|---|---|
| Issued to: | Mercy Health Corporation |
| Issued by: | TDC Specialty Insurance Company |

In consideration of the premium charged, ITEM 4 of the Declarations is amended to read in its entirety as follows:

ITEM 4.   **UNDERLYING INSURANCE**

(A) **Primary Policy:**

| Insurer: | Coverage: | Policy Number: | Policy Period: | Limits of Liability: | Deductible or Retention: |
|---|---|---|---|---|---|
| SIR | Professional Liability | Not Applicable | 09/01/2017 – 07/01/2018 | Not Applicable | $3,000,000 Each Claim SIR Limit of Liability $9,000,000 Aggregate SIR Limit of Liability |
| Rockford Health Ins. Buffer SIR | Professional Liability | RHIL-RPL 1001/17 | 09/01/2017 – 06/30/2018 | Not Applicable | $1,000,000 Buffer SIR $2,000,000 Buffer SIR Aggregate |
| SIR (Legacy Rockford IL) | General Liability | Not Applicable | 09/01/2017 – 07/01/2018 | Not Applicable | $2,000,000 Each Claim SIR Limit of Liability |
| ProAssurance Casualty – Contingent Excess WI | Professional Liability | HP2101 | 07/01/2017 – 07/01/2018 | $1,000,000 Excess of $1,000,000 Each Claim Limit of Liability $3,000,000 Aggregate Limit of Liability | Not Applicable |
| ProAssurance Casualty (Legacy Mercy WI) | General Liability | HP2101 | 07/01/2017 – 07/01/2018 | $1,000,000 Each Claim Limit of Liability $3,000,000 Aggregate Limit of Liability | Not Applicable |

| Federal Insurance Company | Automobile Liability | 1773596533 | 01/01/2017 – 07/01/2018 | $1,000,000 Combined Single Limit | Not Applicable |
|---|---|---|---|---|---|
| Global Aerospace | Aviation Ground Operations Liability | 13000074 | 07/01/2017 – 07/01/2018 | $30,000,000 Each Claim Limit of Liability | Not Applicable |
| Global Aerospace | Non-Owned Aviation Liability | 13000075 | 07/01/2017 – 07/01/2018 | $10,000,000 Each Claim Limit of Liability | Not Applicable |
| Travelers Property Casualty | Employer's Liability | TC2JUB8E0 8772417 | 07/01/2017 – 07/01/2018 | $1,000,000 Each Employee $1,000,000 Each Accident $1,000,000 Aggregate | Not Applicable |
| Atlantic Specialty Insurance Company | Managed Care Liability | MCR951017 | 07/01/2017 – 07/01/2018 | $5,000,000 Each Claim Limit of Liability $5,000,000 Aggregate Limit of Liability | Not Applicable |
| SIR | Managed Care Liability | Not Applicable | 07/01/2017 – 07/01/2018 | Not Applicable | $2,000,000 |

(B) **Underlying Insurance:**

| Insurer: | Coverage: | Policy Number: | Policy Period: | Limits of Liability: | Deductible or Retention: |
|---|---|---|---|---|---|
| ProAssurance Specialty Insurance Company, Inc. | Umbrella Liability | HP2113 | 09/01/2017 – 07/01/2018 | $10,000,000 Each Claim Limit of Liability<br><br>$10,000,000 Aggregate Limit of Liability | $50,000 |
| Homeland Insurance Company of New York | Excess Liability | MPX-3991-17 | 09/01/2017 – 07/01/2018 | $10,000,000 Each Claim Limit of Liability<br><br>$10,000,000 Aggregate Limit of Liability | Not Applicable |

All other terms, conditions and limitations of this Policy shall remain unchanged.



| | **Underwritten by: TDC Specialty Insurance Company** |
|---|---|
| | **1050 K Street, Suite 400** |
| | **Washington, DC 20001** |
| | **Servicing Address: 29 Mill Street** |
| | **Unionville, CT 06085** |

ENDORSEMENT NO. 2
RETROACTIVE DATE ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 09/01/2017, forms part of

      Policy Number:   HPX-00001-17-01
      Issued to:        Mercy Health Corporation
      Issued by:       TDC Specialty Insurance Company

In consideration of the premium charged:

(1)     Notwithstanding any provision to the contrary in this Policy, it is understood and agreed that no coverage will be available under this Policy for any **claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any wrongful act or occurrence that happened prior to the **retroactive date**.

(2)     For purposes of determining when the coverage afforded under this Policy shall attach, it is understood and agreed that the limits of liability of the **underlying insurance** will be deemed to have been eroded (or exhausted) by payment of loss, damages, judgments, settlements, or defense costs in connection with any **claim** not covered under this Policy pursuant to paragraph (1) of this endorsement.

(3)     For purposes of this endorsement, the term "**retroactive date**" means 09/01/2000.


All other terms, conditions and limitations of this Policy shall remain unchanged.



| | Underwritten by: TDC Specialty Insurance Company |
|---|---|
| | 1050 K Street, Suite 400 |
| | Washington, DC 20001 |
| | Servicing Address: 29 Mill Street |
| | Unionville, CT 06085 |

ENDORSEMENT NO. 3
CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 09/01/2017, forms part of

      Policy Number:   HPX-00001-17-01
      Issued to:        Mercy Health Corporation
      Issued by:        TDC Specialty Insurance Company

In consideration of the premium charged:

(1)     If aggregate insured losses attributable to **certified acts of terrorism** (as defined below) exceed $100 billion in a calendar year and **we** have met our insurer deductible under the Terrorism Risk Insurance Act ("the Act"), **we** shall not be liable for the payment of any portion of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro-rata allocation in accordance with procedures established by the Secretary of the Treasury.

(2)     Notwithstanding paragraph (1) above, it is understood and agreed that in the event there is no coverage for losses attributable to **certified acts of terrorism** under any **underlying insurance** due to an exclusion in such **underlying insurance**, then no coverage is available under this Policy for any **claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any **certified act of terrorism**.

(3)     For purposes of this endorsement, the following term shall have the meaning set forth below and Section II DEFINITIONS of this Policy shall be deemed amended to include such term:

           "**Certified act of terrorism**" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the Act, to be an act of terrorism pursuant to the Act. The criteria contained in the Act for a "certified act of terrorism" include the following:

           (a)     the act resulted in insured losses in excess of $5,000,000 in the aggregate, attributable to all types of insurance subject to the Act; and

           (b)     the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms, conditions and limitations of this Policy shall remain unchanged.



| | Underwritten by: TDC Specialty Insurance Company |
|---|---|
| | 1050 K Street, Suite 400 |
| | Washington, DC 20001 |
| | Servicing Address: 29 Mill Street |
| | Unionville, CT 06085 |

ENDORSEMENT NO. 4
SERVICE OF SUIT ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 09/01/2017, forms part of

Policy Number:    HPX-00001-17-01
Issued to:        Mercy Health Corporation
Issued by:        TDC Specialty Insurance Company

In consideration of the premium charged, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, **we** hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose by statute, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the **insured**, or any beneficiary hereunder, arising out of this contract of insurance.

All other terms, conditions and limitations of this Policy shall remain unchanged.



| | Underwritten by: TDC Specialty Insurance Company |
|---|---|
| | 1050 K Street, Suite 400 |
| | Washington, DC 20001 |
| | Servicing Address: 29 Mill Street |
| | Unionville, CT 06085 |

ENDORSEMENT NO. 5
MAILING ADDRESS ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 09/01/2017, forms part of

Policy Number:   HPX-00001-17-01
Issued to:         Mercy Health Corporation
Issued by:         TDC Specialty Insurance Company

In consideration of the premium charged:

(1)     Notwithstanding any provision to the contrary in this Policy, it is understood and agreed that any and all correspondence required under, or in connection with, this Policy shall be mailed to the following entity at the following address:

Mercy Health Corporation

1000 Mineral Point Ave

Janesville, WI 53547

(2)     It is understood and agreed that any and all correspondence required under, or in connection with, this Policy that is mailed to the entity at the address stated in paragraph (1) of this endorsement shall be deemed correspondence mailed to the person or entity first named in ITEM 1 of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

# Ex. C



Healthcare Follow Form Excess Liability

Mercy Health Corporation

HPX-00001-18-02

07/01/2018 - 07/01/2019

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC.  **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy based on Presidential declarations of "national emergency."  OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons."  This list can be located on the United States Treasury's web site – https://www.treasury.gov/ofac

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



**TDC SPECIALTY UNDERWRITERS**

The Doctors Company Group

Underwritten by: TDC Specialty Insurance Company
1050 K Street, Suite 400
Washington, DC 20001
Servicing Address: 29 Mill Street
Unionville, CT 06085

## DECLARATIONS

## FOLLOW FORM EXCESS POLICY

**PORTIONS OF THIS POLICY APPLY ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO US DURING THE POLICY PERIOD. DEFENSE COSTS ARE PART OF AND NOT IN ADDITION TO THE LIMITS OF LIABILITY. *PLEASE READ THIS POLICY CAREFULLY.***

**Policy Number:** HPX-00001-18-02

| ITEM 1. | **INSURED** | ITEM 2. | **POLICY PERIOD** |
|---|---|---|---|
| | Name and Principal Address | | |
| | Mercy Health Corporation | | (a) Inception Date 07/01/2018 |
| | 2400 N. Rockton Ave. | | (b) Expiration Date 07/01/2019 |
| | Rockford, IL 61103 | | Both dates at 12:01 a.m. at the Principal Address in ITEM 1 |

ITEM 3.  **LIMITS OF LIABILITY**

(A)  Each **claim** Limit of Liability $15,000,000
(B)  Policy Aggregate Limit of Liability $15,000,000

ITEM 4.  **UNDERLYING INSURANCE**

See Endorsement No. 1 - Schedule of Underlying Insurance

ITEM 5.  **PREMIUM:** ███████████

☒ *Gross Premium:* **We will pay a percentage of the Premium shown above as brokerage commission. Consult your broker for information concerning commission.**

☐ *Net Premium:* **The premium shown above is net, and we will pay no brokerage commission of any kind thereon.**

| ITEM 6. | **ALL NOTICES REQUIRED TO BE GIVEN TO US UNDER SECTION V. REPORTING OF CLAIMS AND CIRCUMSTANCES OF THIS POLICY MUST BE ADDRESSED TO:**<br><br>Mari Spina<br>TDC Specialty Underwriters, Inc.<br>NoticeOfLoss@TDCSpecialty.com<br><br>**ALL OTHER NOTICES REQUIRED TO BE GIVEN TO US UNDER THIS POLICY MUST BE ADDRESSED TO:**<br><br>TDC Specialty Underwriters, Inc.<br>29 Mill Street, Suite 1.6<br>Unionville, CT 06085 |
|---|---|
| ITEM 7. | **POLICY FORM AND ENDORSEMENTS ATTACHED AT ISSUANCE:**<br><br>HXF-000001-08-16<br><br>HXE-000010-07-17<br><br>HXE-000006-08-16<br><br>HXE-000012-09-16<br><br>HXE-000027-06-17 |

These Declarations, the completed signed **Application**, and the Policy (together with any and all endorsements thereto) shall constitute the entire agreement between **you** and **us.**

---

**TDC Specialty Insurance Company**
By:

_____          _____
Its Authorized Representative                          02/25/2019
                                                                         Date:



**TDC SPECIALTY UNDERWRITERS**
The Doctors Company Group

Underwritten by: **TDC Specialty Insurance Company**
1050 K Street, Suite 400
Washington, DC 20001
Servicing Address: 29 Mill Street
Unionville, CT 06085

## FOLLOW FORM EXCESS POLICY

**PORTIONS OF THIS POLICY APPLY ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO US DURING THE POLICY PERIOD OR, SOLELY IF APPLICABLE, ANY EXTENSION PERIOD FOR REPORTING CLAIMS. DEFENSE COSTS ARE PART OF AND NOT IN ADDITION TO THE LIMITS OF LIABILITY. DEFENSE COSTS WILL REDUCE AND MAY EXHAUST COMPLETELY THE LIMIT OF LIABILITY. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

In consideration of the payment of the premium, and in reliance upon all statements made and information furnished to **us** and to any issuer of the **underlying insurance**, and subject to all of the terms and conditions of this Policy (including all endorsements attached hereto), **we** and the **insured** agree as follows:

## I.  INSURING AGREEMENT

**We** will pay on behalf of the **insured**, up to the applicable Limit of Liability shown in ITEM 3 of the Declarations, any loss, damages, judgments, settlements, and defense costs in excess of the total limits of liability for all applicable **underlying insurance** which an **insured** is legally obligated to pay as result of a covered **claim**; provided, that:

(A)   such **underlying insurance** also applies and has been exhausted by actual payment thereunder, or would apply but for the exhaustion of the total limits of liability thereunder;

(B)   this Policy will apply in conformance with, and will follow the form of, the terms and conditions of the **primary policy** (including all endorsements thereto), and to the extent coverage is further limited or restricted by any other **underlying insurance**, of such **underlying insurance**, except:

   (1)   with respect to any provision to the contrary in this Policy;

   (2)   the applicable limits of liability of such **underlying insurance** shall be deemed to be reduced or exhausted solely as a result of payments for loss, damages, judgments, settlements, or defense costs that are covered under this Policy;

   (3)   the coverage provided by this Policy shall not be broader than any **underlying insurance** unless expressly provided in this Policy; and

   (4)   in all events, in the event that this Policy provides insurance excess of professional liability, the coverage afforded hereunder with respect to such professional liability coverage shall be deemed to apply on a claims-made and reported basis, regardless of whether the **primary policy** provides such coverage on a claims-made or occurrence basis;

(C)   **we** will not have any obligation to make any payment hereunder unless and until the full amount of the total limits of liability of such **underlying insurance** has been paid by the issuer(s) of such **underlying insurance**, an **insured** or by another

party on behalf, or for the benefit, of the **insured** or the issuer(s) of such **underlying insurance**; and

(D)     **our** obligation to pay loss, damages, judgments, settlements, and defense costs as a result of a covered **claim** after the date of exhaustion of the full amount of the total limits of liability of such **underlying insurance** shall be excess of any applicable deductible or retention under the **underlying insurance**.

## II.     DEFINITIONS

(A)     **Claim** shall have the meaning ascribed to it (or similar term) in the applicable **underlying insurance**.

(B)     **Insured** means any person or entity included within the definition of "Insured" (or similar term) in the applicable **underlying insurance**.

(C)     **Policy period** means the period of time from the Inception Date of this Policy stated in ITEM 2(a) of the Declarations to the Expiration Date of this Policy stated in ITEM 2(b) of the Declarations, or to any earlier cancellation or termination date of this Policy.

(D)     **Primary policy** means the policy scheduled as such in ITEM 4(A) of the Declarations.

(E)     **Underlying insurance** means the **primary policy** and all insurance policies, bonds, self-insurance programs, trust agreements, or other risk transfer arrangements scheduled in ITEM 4 of the Declarations, and all renewals or replacements thereof.

(F)     **We, us** and **our** means the Underwriting Company as set forth in the Declarations.

## III.     UNDERLYING INSURANCE

(A)     As long as this Policy is in effect, all **underlying insurance** must: (1) continuously be kept in full force and effect; (2) provide no less coverage than provided by all of the insurance policies, bonds, self-insurance programs, trust agreements, or other risk transfer arrangements scheduled in ITEM 4 of the Declarations; (3) provide no lower limits of liability than those scheduled in ITEM 4 of the Declarations (except to the extent such limits are reduced or exhausted due to the payment of covered **claims** under such **underlying insurance**); and (4) be available and collectible. If the **underlying insurance** fails to meet any such criteria in (1) through (4) above, then **we** shall not be liable under this Policy earlier or to any greater extent than **we** would have been if such **underlying insurance** was still in full force and effect, contained its original provisions, had the original scheduled limits of liability, and was fully available and collectible.

(B)     No amendment or modification to any **underlying insurance** shall be binding upon **us** or effective in changing the terms and conditions of, or extending the coverage or limits of liability afforded by, this Policy without **our** express written agreement. The **insured** shall provide **us** with: (1) prompt notice of any payment of any **claim** under any **underlying insurance**; (2) any cancellation, termination, or non-renewal of any **underlying insurance**; or (3) any change in or modification of any **underlying insurance** by endorsement or otherwise. This Policy shall automatically be rescinded upon the rescission of any **underlying insurance**.

(C)    If any **underlying insurance** (including any endorsement(s) attached thereto) contains an insuring agreement or a grant of coverage with a limit of liability of a lesser amount than the applicable "Each Claim" limit of liability scheduled in ITEM 4 of the Declarations, then this Policy will not follow form of, and shall not apply to, such insuring agreement or grant of coverage, and no payment made under such insuring agreement or grant of coverage shall reduce or exhaust the applicable limits of liability of such **underlying insurance**.

## IV.    LIMITS OF LIABILITY AND EXHAUSTION OF LIMITS

(A)    **Each Claim Limit of Liability**.  The amount stated in ITEM 3(A) of the Declarations shall be **our** maximum Limit of Liability for all loss, damages, judgments, settlements and defense costs from each **claim** for which this Policy provides coverage.  This Limit of Liability shall be part of, and not in addition to, the Policy Aggregate Limit of Liability stated in ITEM 3(B) of the Declarations.

(B)    **Policy Aggregate Limit of Liability**.  The amount stated in ITEM 3(B) of the Declarations shall be **our** maximum aggregate Limit of Liability for all loss, damages, judgments, settlements and defense costs from all **claims** for which this Policy provides coverage.

(C)    Defense costs are part of, and not in addition to **our** applicable Limits of Liability, and **our** payment of defense costs will reduce, and may exhaust, this Policy's applicable Limits of Liability.

(D)    **We** will have no obligation to pay any loss, damages, judgments, settlements, or defense costs after the Policy Aggregate Limit of Liability stated in ITEM 3(B) of the Declarations has been exhausted by payments under this Policy.  If the Policy Aggregate Limit of Liability is exhausted by payments under this Policy, the premium will be fully earned, all of **our** obligations under this Policy will be completely fulfilled and exhausted, and **we** will have no further obligations of any type, nature, or kind under this Policy.

## V.    REPORTING OF CLAIMS AND CIRCUMSTANCES

As a condition precedent to any right to coverage under this Policy, the **insured** must comply with the following:

(A)    the **insured** must provide **us** with written notice of any **claim** as soon as practicable, and in any event within the time period set forth by the **primary policy** with respect to notice of **claims**;

(B)    the **insured** must provide **us** with written notice of any claim, loss, act, error, omission, circumstance, or other matter with respect to which notice has been provided under any **underlying insurance**; and

(C)    if, during the **policy period**, the **insured** first becomes aware of any facts or circumstances that might subsequently give rise to a **claim** and the **insured** exercises any right under the **underlying insurance** to report such facts or circumstances, then the **insured** must also report such facts or circumstances to **us** as soon as practicable but in any event before the Expiration Date or earlier cancellation or termination of this Policy.  Any covered **claim** subsequently made against the **insured** arising out of such facts or circumstances (and for which written notice is given to **us** as soon as practicable thereafter) shall be treated as if it had been first made and reported to **us** during the **policy period**, provided that

the applicable **underlying insurance** is also treating such **claim** as if it had been first made and reported during the **policy period**.

## VI. CANCELLATION AND NON-RENEWAL

(A)  The **insured** may cancel this Policy at any time by delivering by hand delivery or overnight mail service or by mailing registered, certified, or other first-class mail, written notice stating when thereafter, and prior to the Expiration Date of this Policy, such cancellation is to be effective.

(B)  **We** shall cancel this Policy only in accordance with the terms and conditions of the **primary policy**.

(C)  If this Policy is cancelled by the **insured**, **we** shall refund any unearned premium computed at the customary short rate table and procedure.  Under all other circumstances, any unearned premium shall be computed pro rata.

(D)  **We** will not be required to renew this Policy upon its expiration.

## VII. OTHER TERMS AND CONDITIONS

(A)  With respect to any **claim** that is reasonably likely to involve the coverage afforded by this Policy, the **insured** shall not settle such **claim**, or incur any expense, make any payment, admit any liability, or assume any obligation with respect to such **claim**, without **our** prior written consent.

(B)  **We** have the right to associate in the defense, investigation, or settlement of any **claim**, even if the limits of liability of the **underlying insurance** have not been exhausted.  If **we** elect to associate in the defense, investigation, or settlement of a **claim**, the **insured** will cooperate with **us** and provide **us** with all information **we** reasonably request.

(C)  In the event of any payment under this Policy, **we** shall be subrogated to the extent of any payment to all of the **insured's** rights of recovery. The **insured** must do everything necessary to secure these rights, including but not limited to executing all documents necessary to secure such rights.  The **insured** shall do nothing that may prejudice **our** position or potential or actual rights of recovery. The obligations of the **insured** under this provision shall survive the expiration or termination of this Policy.

(D)  The person or entity first named in ITEM 1 of the Declarations will act on behalf of all **insureds** with respect to: the giving and receiving of any notices and other communications under this Policy; the payment of premiums to, and receiving of return premiums from, **us**; and the receiving and acceptance of any endorsements issued to form a part of this Policy.

(E)  The **insured** represents that the particulars and statements contained in the application submitted in connection with this Policy or with any **underlying insurance** are true, accurate and complete, and agree that: (1) this Policy is issued and continued in force by **us** in reliance on the truth of that representation; (2) those particulars and statements are the basis of this Policy; and (3) such application and those particulars and statements are incorporated into and form a part of this Policy.

**In Witness Whereof, we have caused this Policy to be executed by our authorized officers**.



| | |
|---|---|
| | **Underwritten by: TDC Specialty Insurance Company**<br>**1050 K Street, Suite 400**<br>**Washington, DC 20001**<br>**Servicing Address: 29 Mill Street**<br>**Unionville, CT 06085** |

ENDORSEMENT NO. 1
SCHEDULE OF UNDERLYING INSURANCE ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 07/01/2018, forms part of

        Policy Number:    HPX-00001-18-02
        Issued to:          Mercy Health Corporation
        Issued by:         TDC Specialty Insurance Company

In consideration of the premium charged, ITEM 4 of the Declarations is amended to read in its entirety as follows:

ITEM 4.   **UNDERLYING INSURANCE**

(A) **Primary Policy:**

| Insurer: | Coverage: | Policy Number: | Limits of Liability: |
|---|---|---|---|
| SIR | Professional Liability | Not Applicable | $3,000,000 Each Claim Limit of Liability $9,000,000 Aggregate Limit of Liability |
| Buffer SIR – Rockford | Professional Liability | Not Applicable | $1,000,000 Each Claim Limit of Liability $2,000,000 Aggregate Limit of Liability |
| SIR | General Liability | Not Applicable | $2,000,000 Each Claim Limit of Liability |
| SIR - Rockford Health Insurance LTD | Managed Care | RHIL-RPL 1001/18 | $2,000,000 Each Claim Limit of Liability |
| Travelers Property Casualty Company of America | Employers Liability (All other states except WI, AZ & MA) | (TC2JUB-8E08772-4-18) | $1,000,000 Each Accident for Bodily Injury by Accident $1,000,000 Policy Limit for Bodily Injury by Disease $1,000,000 Each Employee for Bodily Injury by Disease |
| Federal Insurance Company | Automobile Liability | (18)7359-65-33 | $1,000,000 Combined Single Limit |
| American Alternative Insurance Corporation | Heliport | 13000074 | $30,000,000 Each Claim Limit of Liability |
| American Alternative Insurance Corporation | Non-Owned Aircraft | 13000075 | $10,000,000 Each Claim Limit of Liability |

| ProAssurance Casualty Company | Wisconsin PL/GL/EBL | HP2101 | $1,000,000 Each Claim Limit of Liability $3,000,000 Aggregate Limit of Liability |
|---|---|---|---|
| ProAssurance Casualty Company | Wisconsin Excess GL | HP2101 | $1,000,000 Each Claim Limit of Liability $1,000,000 Aggregate Limit of Liability |
| Atlantic Specialty Insurance Company | Managed Care Liability | MCR-10191-18 | $5,000,000 Each Claim Limit of Liability $5,000,000 Aggregate Limit of Liability |
| Travelers Property Casualty Company of America | Employers Liability (WI, AZ & MA) | (TRJUB-1109L84-9-18) | $1,000,000 Each Accident for Bodily Injury by Accident $1,000,000 Policy Limit for Bodily Injury by Disease $1,000,000 Each Employee for Bodily Injury by Disease |

(B) **Underlying Insurance:**

| Insurer: | Coverage: | Policy Number: | Limits of Liability: |
|---|---|---|---|
| ProAssurance Specialty Insurance Company, Inc. | Umbrella Liability | HP2422 | $10,000,000 Each Claim Limit of Liability $10,000,000 Aggregate Limit of Liability |
| Scottsdale Insurance Company | Excess Liability | HPS0000072 | $5,000,000 Each Claim Limit of Liability $5,000,000 Aggregate Limit of Liability |

All other terms, conditions and limitations of this Policy shall remain unchanged.



| | Underwritten by: TDC Specialty Insurance Company |
|---|---|
| | **1050 K Street, Suite 400** |
| | **Washington, DC 20001** |
| | **Servicing Address: 29 Mill Street** |
| | **Unionville, CT 06085** |

ENDORSEMENT NO. 2
CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 07/01/2018, forms part of

        Policy Number:   HPX-00001-18-02
        Issued to:         Mercy Health Corporation
        Issued by:         TDC Specialty Insurance Company

In consideration of the premium charged:

(1)    If aggregate insured losses attributable to **certified acts of terrorism** (as defined below) exceed $100 billion in a calendar year and **we** have met our insurer deductible under the Terrorism Risk Insurance Act ("the Act"), **we** shall not be liable for the payment of any portion of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro-rata allocation in accordance with procedures established by the Secretary of the Treasury.

(2)    Notwithstanding paragraph (1) above, it is understood and agreed that in the event there is no coverage for losses attributable to **certified acts of terrorism** under any **underlying insurance** due to an exclusion in such **underlying insurance**, then no coverage is available under this Policy for any **claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any **certified act of terrorism**.

(3)    For purposes of this endorsement, the following term shall have the meaning set forth below and Section II DEFINITIONS of this Policy shall be deemed amended to include such term:

        "**Certified act of terrorism**" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the Act, to be an act of terrorism pursuant to the Act. The criteria contained in the Act for a "certified act of terrorism" include the following:

        (a)    the act resulted in insured losses in excess of $5,000,000 in the aggregate, attributable to all types of insurance subject to the Act; and

        (b)    the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms, conditions and limitations of this Policy shall remain unchanged.



| | |
|---|---|
| | **Underwritten by: TDC Specialty Insurance Company**<br>**1050 K Street, Suite 400**<br>**Washington, DC 20001**<br>**Servicing Address: 29 Mill Street**<br>**Unionville, CT 06085** |

ENDORSEMENT NO. 3
SERVICE OF SUIT ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 07/01/2018, forms part of

      Policy Number:   HPX-00001-18-02
      Issued to:        Mercy Health Corporation
      Issued by:        TDC Specialty Insurance Company

In consideration of the premium charged, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, **we** hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose by statute, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the **insured**, or any beneficiary hereunder, arising out of this contract of insurance.


All other terms, conditions and limitations of this Policy shall remain unchanged.



**Underwritten by: TDC Specialty Insurance Company**
**1050 K Street, Suite 400**
**Washington, DC 20001**
**Servicing Address: 29 Mill Street**
**Unionville, CT 06085**

ENDORSEMENT NO. 4
MAILING ADDRESS ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 07/01/2018, forms part of

Policy Number:    HPX-00001-18-02
Issued to:           Mercy Health Corporation
Issued by:          TDC Specialty Insurance Company

In consideration of the premium charged:

(1)    Notwithstanding any provision to the contrary in this Policy, it is understood and agreed that any and all correspondence required under, or in connection with, this Policy shall be mailed to the following entity at the following address:

Mercy Health Corporation
1000 Mineral Point Ave, Janesville, WI, 53547

(2)    It is understood and agreed that any and all correspondence required under, or in connection with, this Policy that is mailed to the entity at the address stated in paragraph (1) of this endorsement shall be deemed correspondence mailed to the person or entity first named in ITEM 1 of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.



Healthcare Follow Form Excess Liability

Mercy Health Corporation

HPX-00001-18-02

Midterm Endorsement(s) No. 5-6



| | Underwritten by TDC Specialty Insurance Company |
|---|---|
| | **1050 K Street, Suite 400** |
| | **Washington, DC 20001** |
| | **Servicing Address: 29 Mill Street** |
| | **Unionville, CT 06085** |

ENDORSEMENT NO. 5
DELETE ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 07/01/2018, forms part of

      Policy Number:      HPX-00001-18-02
      Issued to:           Mercy Health Corporation
      Issued by:          TDC Specialty Insurance Company

In consideration of the premium charged, on and as of the effective date of this endorsement, the following endorsement(s) to this Policy shall be deemed to be deleted in its/their entirety from this Policy:

     <u>Endorsement Number</u>               <u>Title of Endorsement</u>
      Endorsement No. 1             Schedule of Underlying Insurance
                                        Endorsement

All other terms, conditions and limitations of this Policy shall remain unchanged.



| | Underwritten by: TDC Specialty Insurance Company |
|---|---|
| | 1050 K Street, Suite 400 |
| | Washington, DC 20001 |
| | Servicing Address: 29 Mill Street |
| | Unionville, CT 06085 |

ENDORSEMENT NO. 6
SCHEDULE OF UNDERLYING INSURANCE ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 07/01/2018, forms part of

Policy Number:   HPX-00001-18-02
Issued to:          Mercy Health Corporation
Issued by:          TDC Specialty Insurance Company

In consideration of the premium charged, ITEM 4 of the Declarations is amended to read in its entirety as follows:

ITEM 4.   **UNDERLYING INSURANCE**

(A) **Primary Policy:**

| Insurer: | Coverage: | Policy Number: | Limits of Liability: |
|---|---|---|---|
| SIR | Professional Liability | Not Applicable | $3,000,000 Each Claim Limit of Liability $9,000,000 Aggregate Limit of Liability |
| Buffer SIR – Rockford | Professional Liability | Not Applicable | $1,000,000 Each Claim Limit of Liability $2,000,000 Aggregate Limit of Liability |
| SIR | General Liability | Not Applicable | $2,000,000 Each Claim Limit of Liability |
| SIR - Rockford Health Insurance LTD | Managed Care | RHIL-RPL 1001/18 | $2,000,000 Each Claim Limit of Liability |
| Travelers Property Casualty Company of America | Employers Liability (All other states except WI, AZ & MA) | (TC2JUB-8E08772-4-18) | $1,000,000 Each Accident for Bodily Injury by Accident $1,000,000 Policy Limit for Bodily Injury by Disease $1,000,000 Each Employee for Bodily Injury by Disease |
| Federal Insurance Company | Automobile Liability | (18)7359-65-33 | $1,000,000 Combined Single Limit |
| Global Aerospace | Heliport | 13000074 | $30,000,000 Each Claim Limit of Liability |
| Global Aerospace | Non-Owned Aircraft | 13000075 | $10,000,000 Each Claim Limit of Liability |

| ProAssurance Casualty Company | General Liability | HP2101 | $1,000,000 Each Claim Limit of Liability $3,000,000 Aggregate Limit of Liability |
|---|---|---|---|
| ProAssurance Casualty Company | Professional Liability (Contingent Excess- WI) | HP2101 | $1,000,000 Each Claim Limit of Liability |
| Atlantic Specialty Insurance Company | Managed Care Liability | MCR-10191-18 | $5,000,000 Each Claim Limit of Liability $5,000,000 Aggregate Limit of Liability |
| Travelers Property Casualty Company of America | Employers Liability (WI, AZ & MA) | (TRJUB-1109L84-9-18) | $1,000,000 Each Accident for Bodily Injury by Accident $1,000,000 Policy Limit for Bodily Injury by Disease $1,000,000 Each Employee for Bodily Injury by Disease |

(B) **Underlying Insurance:**

| Insurer: | Coverage: | Policy Number: | Limits of Liability: |
|---|---|---|---|
| ProAssurance Specialty Insurance Company, Inc. | Umbrella Liability | HP2422 | $10,000,000 Each Claim Limit of Liability $10,000,000 Aggregate Limit of Liability |
| Scottsdale Insurance Company | Excess Liability | HPS0000072 | $5,000,000 Each Claim Limit of Liability $5,000,000 Aggregate Limit of Liability |

All other terms, conditions and limitations of this Policy shall remain unchanged.



Healthcare Follow Form Excess Liability

Mercy Health Corporation

HPX-00001-18-02

Midterm Endorsement(s) No. 7-8



| | Underwritten by TDC Specialty Insurance Company |
|---|---|
| | 1050 K Street, Suite 400 |
| | Washington, DC 20001 |
| | Servicing Address: 29 Mill Street |
| | Unionville, CT 06085 |

ENDORSEMENT NO. 7
DELETE ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 07/01/2018, forms part of

Policy Number:     HPX-00001-18-02
Issued to:             Mercy Health Corporation
Issued by:            TDC Specialty Insurance Company

In consideration of the premium charged, on and as of the effective date of this endorsement, the following endorsement(s) to this Policy shall be deemed to be deleted in its/their entirety from this Policy:

Endorsement Number                    Title of Endorsement
  Endorsement No. 6                       Schedule of Underlying Insurance
                                                      Endorsement

All other terms, conditions and limitations of this Policy shall remain unchanged.



| | Underwritten by TDC Specialty Insurance Company |
|---|---|
| | 1050 K Street, Suite 400 |
| | Washington, DC 20001 |
| | Servicing Address: 29 Mill Street |
| | Unionville, CT 06085 |

ENDORSEMENT NO. 8
SCHEDULE OF UNDERLYING INSURANCE ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 07/01/2018 forms part of

| Policy Number: | HPX-00001-18-02 |
|---|---|
| Issued to: | Mercy Health Corporation |
| Issued by: | TDC Specialty Insurance Company |

In consideration of the premium charged, ITEM 4 of the Declarations is amended to read in its entirety as follows:

ITEM 4.   **UNDERLYING INSURANCE**

(A) **Primary Policy:**

| Insurer: | Coverage: | Policy Number: | Limits of Liability: |
|---|---|---|---|
| SIR | Professional Liability | Not Applicable | $3,000,000 Each Claim Limit of Liability<br><br>$9,000,000 Aggregate Limit of Liability |
| Buffer SIR- Rockford Health Insurance LTD | Professional Liability | RHIL-RPL 1001/18 | $1,000,000 Each Claim Limit of Liability<br><br>$2,000,000 Aggregate Limit of Liability |
| SIR | General Liability | Not Applicable | $2,000,000 Each Claim Limit of Liability |
| SIR | Managed Care | Not Applicable | $2,000,000 Each Claim Limit of Liability |
| Travelers Property Casualty Company of America | Employers Liability (All other states except WI, AZ & MA) | (TC2JUB8E08772-4-18) | $1,000,000 Each Accident for Bodily Injury by Accident<br><br>$1,000,000 Policy Limit for Bodily Injury by Disease<br><br>$1,000,000 Each Employee for Bodily Injury by Disease |
| Federal Insurance Company | Automobile Liability | (18)7359-65-33 | $1,000,000 Combined Single Limit |
| Global Aerospace | Heliport | 13000074 | $30,000,000 Each Claim Limit of Liability |
| Global Aerospace | Non-Owned Aircraft | 13000075 | $10,000,000 Each Claim Limit of Liability |

| ProAssurance Casualty Company | General Liability | HP2101 | $1,000,000 Each Claim Limit of Liability $3,000,000 Aggregate Limit of Liability |
| ProAssurance Casualty Company | Professional Liability (Contingent Excess – WI) | HP2101 | $1,000,000 Each Claim Limit of Liability |
| Atlantic Specialty Insurance Company | Managed Care Liability | MCR-10191-18 | $5,000,000 Each Claim Limit of Liability $5,000,000 Aggregate Limit of Liability |
| Travelers Property Casualty Company of America | Employers Liability (WI, AZ & MA) | (TRJUB1109L84-9-18) | $1,000,000 Each Accident for Bodily Injury by Accident $1,000,000 Policy Limit for Bodily Injury by Disease $1,000,000 Each Employee for Bodily Injury by Disease |

(B) **Underlying Insurance:**

| Insurer: | Coverage: | Policy Number: | Limits of Liability: |
| --- | --- | --- | --- |
| ProAssurance Specialty Insurance Company, Inc. | Umbrella Liability | HP2422 | $10,000,000 Each Claim Limit of Liability $10,000,000 Aggregate Limit of Liability |
| Scottsdale Insurance Company | Excess Liability | HPS0000072 | $5,000,000 Each Claim Limit of Liability $5,000,000 Aggregate Limit of Liability |

All other terms, conditions and limitations of this Policy shall remain unchanged.